Bud JOYCE and Eleanor G. Joyce,
Appellants-Respondents,

v.

Charles NASH, d/b/a Thunderbird Trailer Sales and Thunderbird Trailer City,
Appellant-Respondent.

No. WD 32004.

Missouri Court of Appeals,
Western District.

Feb. 2, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 2, 1982.

David E. Larson & W. Robert King, Morris, Larson, King, Stamper & Bold, Kansas City, for Bud & Eleanor Joyce.

Don B. Roberson, Kansas City, for Charles Nash, et al.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

SHANGLER, Presiding Judge.

The plaintiffs Joyce, husband and wife, had judgment for damages against Nash, doing business as Thunderbird Trailer Sales, etc., on a theory that the defendant negligently locked them in the business compound after regular hours so that they were

assailed by guard dogs unleashed by the defendant. The petition was for actual and punitive damages. The jury returned compensatory awards of $3,000 for the husband and $7,000 for the wife, but no exemplary damages. The litigants cross-appeal.

The plaintiffs contend the refusal to submit punitive damages by the instructions tendered was error. The defendant contends that the instructions under which the jury returned actual damages submitted strict liability rather than negligence, and so were error.

The evidence taken most favorably to the verdicts for the plaintiffs shows that the Joyces were on the Thunderbird premises in response to a newspaper advertisement by the defendant for the sale of a motor home. The plaintiff telephoned Thunderbird to inquire as to the motor home advertised and to display interest in a purchase. The telephone communicant, an employee, disclosed the price and advised that an appointment was not necessary because the business was "open late every night." A day or so later, at about 7:30 p. m., the husband, wife and daughter drove the family pickup truck to the Thunderbird lot to inspect the motor home advertised in the newspaper. That place of business was a compound completely enclosed by a fence topped with barbed wire. The Joyces drove through the west gate and noticed the motor home they came to see. The office structure was directly ahead. The lights were on inside and Joyce could see people in the office through the front plate glass window. [The defendant Nash acknowledged that from the office interior a person could see any vehicle enter through the west gate.] A sign in the window announced: "Yes, We're Open." There were two cars parked by the office structure, but no sign warned about dogs. Nor did any sign designate an area for customers to park.

The plaintiffs parked the pickup, got out, awaited the appearance of a salesperson, and after several minutes went by without event, they walked over to the motor home of their interest. The door was unlocked so they entered and inspected the interior.

The keys were in the ignition, so the husband started the engine to the accessories. It was a very hot night and the generator was not operable, so the Joyces emerged and attempted to start the air-conditioner from an outside manual switch on the other side of the motor home. The first dog appeared then. It came up to the daughter [a mongoloid], and a second animal commenced to converge. The three of them gained the shelter of the pickup and, by then, five or so large canines kept them at siege by their vicious and angry antics. Joyce drove the pickup to the office, noticed the cars were gone, sounded the horn, and then noticed the gate was chained and padlocked.

The three of them remained enclosed in the cab of the truck. The dogs responded to every movement by lunges and claw scratches against the doors. It was not safe to open the vehicle door. They contrived to remain totally quiet for a number of minutes, and that calmed both the child and the animals. Thus, Joyce was able to extend himself out of the truck by one foot on the armrest and another foot on the seat to attempt to flag down passersby. By this time about an hour elapsed. A motorcyclist stopped. Joyce tossed him coins to call the police, but that attempt did not succeed. A second effort to extricate the Joyces also failed. A third person managed to gain a police response. They found the Joyces in the truck, the windows up, the dogs lunging at the side of the vehicle. The police soon concluded that the animals were too dangerous to consider an incursion onto the premises for a rescue. They called the fire department. The police rattled the fence at a distance point to engage the dogs while the firefighters slung a ladder over the fence onto the truck bed for the rescue. The maneuver was made more difficult because the child did not easily understand directions. Two and one-half hours elapsed between the impoundment and the rescue of the Joyces.

The next morning the Joyces returned to the Thunderbird premises to retrieve the pickup truck. The defendant Nash was re-

luctant to allow the repossession and was skeptical of the account of the event. After some unpleasantness, Joyce was allowed to drive the truck away.

The defendant Nash disclaimed any knowledge of the presence of the Joyces or the truck on the compound at the time he locked and left the premises at 7:55 p. m. that evening. That night, as every other, the defendant Nash and his wife conducted the normal procedure of inspection of the premises before the gate was locked. The normal course was to lock the east gate first. Nash then parked his car in the west gate to prevent entry to any vehicle. In the meanwhile, Ms. Nash makes certain that each trailer door is closed, and then proceeds to west gate to await the husband. He has fed the dogs by this time, but waters them just before he leaves, and releases them onto the grounds from the kennel. His final precaution is to make a tour of the lot with a dog or two, for the animals to detect anything amiss. He determines for himself that each door is closed, walks through the office, and locks the doors. The final act is to lock the west gate.

The petition of the plaintiffs Joyce stated three counts: (1) false imprisonment, (2) negligent failure to warn of dangerous and defective conditions on the premises or to make them safe for business invitees, (3) negligent failure to determine that there were no persons on the premises before the guard dogs were let loose and the gates locked. The petition alleged that, as to each cause of action, the conduct of the defendant Nash was reckless and willful and claimed punitive damages. The Joyces, husband and wife, submitted only Count III by instructions duplicate except for the plaintiff designation:

> Your verdict must be for the plaintiff[s], [Bud Joyce—Eleanor G. Joyce], if you believe:
> First, defendant locked the plaintiff[s] in the compound, or defendant released the dogs while the plaintiff[s] were inside the defendant's premises, and
> Second, in any one or more of the above respects defendant was thereby negligent, and

> Third, as a direct result of such negligence the plaintiff[s] sustained damage
> Unless you believe the plaintiff[s] are not entitled to recovery by reason of Instruction[s] Number 4 [and 7].

Instructions Number 4 and 7 submitted the failure of the husband and wife, respectively, to inform the defendant of their presence [etc.] as contributory negligence.

The defendant contends that the verdict directors do not postulate for an award that the defendants knew, or in the exercise of reasonable care, should have known, the plaintiffs were on the premises when Nash locked the gates or released the dogs—and so submit not a theory of negligence, but of strict liability. We agree.

■ The law imposes a duty upon a person to act so as to avoid unreasonable risk of harm to another. *Hamilton v. Ross*, 304 S.W.2d 812, 814[1, 2] (Mo.1957). Actionable negligence results, therefore, from the failure of a person under the duty of reasonable care, to protect the other injury. *Nichols v. Blake*, 418 S.W.2d 188, 190[5, 6] (Mo.1967); Restatement (Second) of the Law of Torts § 281 (1965). The law expects an actor under duty of care to another to conform conduct to the standard of a reasonable person—that is to say, negligence is a departure from the measure of conduct the community expects for the protection of others against unreasonable risk of harm. Restatement (Second) of the Law of Torts § 283, Comments b and c (1965). Thus, the standard of care the law exacts is external and objective: what an ordinarily careful and prudent person would do *under the particular circumstances*. *Crowder v. Vandendeale*, 564 S.W.2d 879, 882[6] (Mo. banc 1978); *Bullock v. Sklar*, 349 S.W.2d 381, 387[10] (Mo.App.1961); Restatement (Second) of the Law of Torts § 285 (1965); 57 Am.Jur.2d, *Negligence* § 1 (1971). Thus, it is the likelihood that the conduct of the actor—under the circumstances—will injure another that gives rise to the duty to exercise due care. *Green v. Kahn*, 391 S.W.2d 269, 275[4] (Mo.1965). In that perspective, therefore, anticipation or foreseeability that

injury will follow conduct constitutes an essential element of actionable negligence. *Donovan v. Union Electric Company*, 454 S.W.2d 623, 626[4, 5] (Mo.App.1970). In even more conclusive terms: "The foreseeability of injury is the touchstone of the quality of the act as negligent. This is the basis of liability." 1 Dooley, Modern Tort Law § 3.10 (1977). In pith, the sum of negligence is the failure to observe a standard of reasonable prudence and foresight. *Taylor v. Dale-Freeman Corporation*, 389 S.W.2d 57, 60[1–3] (Mo.1965).

■ The defendant does not contest that he owed a duty of due care to the plaintiffs Joyce.[1] The defendant does not contest that the Joyces suffered damage. The defendant does contest that he breached any duty to the Joyces—that is, that he failed to conform to the standard of a reasonable person under the circumstances to foresee the risk of injury to a person on the premises by the release of the dogs in a fastened compound. The defendant contends, rather, that the evidence of the customary round of inspection to clear the premises of persons before the release of the guard animals and the gates were made secure proves that he took precautions commensurate with any danger reasonably foreseeable. The defendant complains that the verdict directors as constructed do not submit that essential proposition antecedent to liability for actionable negligence: that the defendant failed to observe a standard of reasonable prudence and foresight of care as to persons [the plaintiffs] whose presence on the premises was known or discoverable.

■ The plaintiffs misconstrue the critique the defendant asserts against the verdict directors. They argue that since the defendant, himself, released the dogs and latched the gate, there was no sound reason to require the jury to find that the defendant knew of the "condition" [the dogs set at large and the locked compound] and that the defendant knew or should have known that conduct involved an unreasonable and foreseeable risk of harm to persons discoverable on the premises. The very essence of a negligence recovery, as we note, is a duty owned and then a breach. In the absence of an antecedent proposition, favorably found, that the act of release of the dogs or closure of the gate was with knowledge or discoverability of the plaintiffs still on the premises, a jury direction would not only impose an absolute liability, but also would unduly restrict the ownership of land. The law abides to the principle that an owner may use property as he will, to enjoy for any lawful purpose. *Reutner v. Vouga*, 367 S.W.2d 34, 42[11–13] (Mo.App. 1963). Unless the defendant knew or should have known the plaintiffs were still on the premises, no principle of law prevented Nash from the release of the dogs to roam within the owned impoundment. The verdict directors as constructed allowed return of award on the postulates, simply,

---

1. The defendant Nash conceives that whatever duty he owed the Joyces was as that of an occupier of land to a business visitor—to avoid injury to an invitee from "a condition of the land" under the principle of *Hokanson v. Joplin Rendering Company, Inc.*, 509 S.W.2d 107, 110[1, 2] (Mo.1974) and the definition in Restatement (Second) of the Law of Torts § 343 (1965). That argument suggests that the proper form to submit the Joyce causes of action was by MAI 22.03—*Verdict Directing—Invitee Injured.* That model instruction [as does Restatement (Second) § 343] formulates the liability of the possessor of land to an invitee for injury from an existent unsafe or defective *condition* on the premises. The petition of the plaintiffs, as well as their evidence, however, posits liability—not on injury from a passive condition of the land—but on an affirmative act of negligence: the release of the dogs and a fastened gate while the Joyces were still on the premises.

Nor does the status of the entrant upon the land—whether trespasser, licensee, or invitee—affect the liability of a possessor of land *once the presence of the entrant on the premises is known or reasonably should be known to the possessor. Cunningham v. Hayes*, 463 S.W.2d 555, 559[1–3] (Mo.App.1971). Thereupon, as to any of them, an occupier of land owes the duty of ordinary care to prevent injury by *active conduct. Cupp v. Montgomery*, 408 S.W.2d 353, 355[1] (Mo.App.1966). MAI 17.02—*Verdict Directing—Multiple Acts of Negligence* used to submit the Joyce causes of action for negligence, properly formulated, suits the theory of recovery under the evidence and the pleadings.

that Nash released the dogs or locked the compound. It imposed liability, not for unreasonable conduct, but for consequences however reasonable the conduct: that is, without a determination of fault. The instructions submitted strict liability, not negligence. *Crowder v. Vandendeale*, 564 S.W.2d 879, 882, note 5 (Mo. banc 1978); Prosser, Handbook of The Law of Torts §§ 30 and 75 (4th ed. 1971).

■ The verdict directors, Instructions Nos. 2 and 5, failed as negligence submissions. Those truncated statements of negligence recovery were not aided, as the plaintiffs contend, by the contributory negligence submissions of the defendant. That is because the propositions of those instructions [that plaintiffs failed to inform defendant of their presence, etc.] related to no duty or breach of duty of the defendant— postulates for actionable negligence the verdict directors lacked altogether. The verdict directors were misdirections as statements of negligence and so rendered the contributory negligence instructions, although otherwise valid statements, incongruous as a defense. The contributory negligence instructions did not cure the verdict directors, but rather accented the original error by another discordance. *Shurtz v. Jost*, 597 S.W.2d 652, 655[3] (Mo.App.1979).

■ The plaintiffs Joyce cross-appeal from the refusal of tendered punitive damages submissions. Those instructions [on the model of MAI 10.02] authorized exemplary damages, in addition to any actual damages returned, if the jury believe the defendant acted with complete indifference to or conscious disregard for the safety of others. That a party may recover both actual and punitive damages for ordinary negligence under the prescription of MAI 10.02 is settled. *Sharp v. Robberson*, 495 S.W.2d 394, 398 (Mo. banc 1973). A person acts with *complete indifference to or conscious disregard for the safety of others* [within the sense of MAI 10.02 and the principle of *Sharp v. Robberson*, supra] when, under the circumstances known or knowable to the actor, a reasonable person would realize the conduct "not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." *Nichols v. Bresnahan*, 357 Mo. 1126, 212 S.W.2d 570, 573[9] (1948); *Smith v. Courter*, 575 S.W.2d 199, 207[6, 7] (Mo. App.1979). The evidence considered most favorably to the plaintiffs does not support a submissible issue that the defendant acted with a complete indifference or conscious disregard for the safety of the Joyces.

Neither the release of the dogs nor the closure of the gates was inherently negligent. That conduct becomes culpable only if the defendant knew or could have known that the Joyces were then still on the premises and—by the standard of a reasonable person—failed to take precaution commensurate with the danger to avoid risk of injury to them. The evidence was that the Joyces entered through the west gate, saw movement of persons in the office through the window, and parked the pickup vehicle off to a side. They tarried with the expectation that some business personnel would look after them, but after some minutes, went around on their own. All the other evidence as to the events before the business premises were locked and secured, and the means used to ensure that the compound was clear of persons before the gates were locked came from the defendant. The rounds of inspection devised to detect a straggler on the premises was reasonable, even meticulous. That the plaintiffs were not observed in the course of that procedure, of course, raises an issue of ordinary negligence which should have been, but was not, submitted to the jury. Although one motive of the precautions the defendant practiced before the west gate was finally latched was to abort burglary and theft, the routine employed to clear the premises of all other persons [even his wife, a business resident on the compound] before the dogs were set on guard and the gates locked served as well, to protect persons lawfully there from predictable injury. The evidence sustains no inference that the conduct of the defendant involved that "high degree of probability that substantial harm

"[would] result" to sustain a negligence punitive damages submission. The refusal of the trial court to submit the tendered punitive damages instructions was not error under the evidence adduced.

The judgment is reversed and the cause is remanded for new trial.

All concur.