Robert L. **JOHNSON**, Respondent/Cross-Appellant,

v.

**AUTO HANDLING CORPORATION**, Cross-Respondent,

and

**Cottrell, Inc., Appellant/Cross-Respondent.**

No. SC 95777

Supreme Court of Missouri, en banc.

Opinion issued June 27, 2017

Opinion Modified on Court's Own Motion August 22, 2017

Rehearing Denied August 22, 2017

454

Johnson was represented during arguments by Michael T. Blotevogel, Roy C. Dripps and Charles W. Armbruster III of Armbruster, Dripps, Winterscheidt & Blotevogel in Maryville, Illinois, (800) 917-1529.

Auto Handling was represented by Paul L. Wickens and William F. Logan of Fo-

land, Wickens, Eisfelder, Roper & Hofer PC in Kansas City, (816) 472-7474.

Cottrell was represented by William Ray Price Jr., Thomas B. Weaver and Jeffery T. McPherson of Armstrong Teasdale LLP in St. Louis, (314) 621-5070.

Laura Denvir Stith, Judge

Defendant Cottrell, Inc., appeals a jury verdict entered in favor of the plaintiff, Robert Johnson, in a products liability case, on his claims of negligence and strict liability failure to warn. Mr. Johnson cross-appeals, challenging the exclusion of evidence of other Cottrell accidents and a directed verdict in favor of the other defendant, Auto Handling Corporation, on all of his claims.

The trial court erred in granting a directed verdict to Auto Handling, as Mr. Johnson made a submissible case that Auto Handling negligently inspected and maintained the tractor trailer driven by Mr. Johnson. The trial court also erred in submitting Mr. Johnson's negligence claims against Cottrell based on MAI 17.02 rather than MAI 25.09, which is mandatory for use where, as here, the plaintiff alleges negligent manufacturing, design, or warning about a product defect that caused plaintiff's accident and injuries. It further erred in submitting the negligence instruction because it allowed the jury to find for Mr. Johnson based on evidentiary rather than ultimate facts. For these rea-

sons, the trial court's judgment is reversed and the case is remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Johnson was employed by Jack Cooper Transport Company, Inc., as a vehicle hauler—the driver of a tractor trailer that transported new automobiles. The trailer was manufactured by Cottrell. In his amended petition, Mr. Johnson alleged an accident occurred in the early morning hours of July 3, 2007, involving the chain and ratchet system on the trailer used to "tie-down" vehicles being transported on the trailer.

On the morning of the accident, Mr. Johnson's pre-driving inspection revealed a loose "tie-down" chain on one of the vehicles being transported. As he attempted to tighten the chain, the idler through which it was threaded broke, suddenly releasing tension on the chain and causing Mr. Johnson to fall onto his tailbone, causing him pain and injury. Mr. Johnson subsequently sought medical care for back pain resulting from the accident. He was diagnosed with a herniated lumbar disk that was repaired by surgery, a discectomy, in January 2008. Mr. Johnson also sustained other injuries both before and after the idler accident,[1] but the record contains substantial evidence he has not recovered from the back injury caused, in whole or in part, by the idler accident.

---

1. On the afternoon of the idler accident, Mr. Johnson suffered another accident when the tie-down slot to which the chain he was tightening was affixed tore and suddenly released tension, allegedly due to the excessive force he was required to put on the chain to secure the vehicle. On this occasion, he was able to avoid falling. Mr. Johnson submitted a separate set of claims against Cottrell based on that accident, but as the jury returned verdicts for Cottrell on all theories submitted and as Mr. Johnson does not appeal those ver-

dicts, that accident and evidence is not further discussed in this opinion.

Evidence at trial also showed Mr. Johnson suffered slip and fall accidents in January 2006 and in December 2008, as well as a flare-up of back pain while walking across the floor at home in March 2006. Because the nature and extent of Mr. Johnson's injuries related to the idler accident are not at issue on this appeal, these other incidents and any injuries which may have resulted from them are not further discussed.

Mr. Johnson brought this action against Cottrell, the manufacturer of the trailer. He claimed the accident was caused by an idler weld and a manual chain and ratchet system negligently designed by Cottrell so as to require the use of more force in securing the vehicles than the design of the system and the strength of the weld on the idler could withstand. He also alleged Cottrell gave inadequate warnings as to the risks involved in using the idler as designed. Additionally, he variously claimed that Cottrell was negligent in failing to review, analyze, and communicate industry injury and testing data related to the chain and ratchet tie-down system to his employer.

Mr. Johnson also sued Auto Handling, a company contracted by Jack Cooper to maintain and repair the tractor trailers, alleging negligent inspection and maintenance of the trailer, negligent repair of the idler, and negligent failure to warn as to the allegedly dangerous design of the original idler weld and of the repair weld.

Jack Cooper had truck transport terminals located near auto manufacturing plants across the country. Many of these terminals, including the Fairfax terminal near Kansas City, Kansas, used exclusively Jack Cooper mechanics, but three of the terminals, including the Wentzville, Missouri, terminal, employed only Auto Handling mechanics.

At trial, Mr. Johnson presented expert testimony from Dr. Gerald Micklow. Dr. Micklow testified Cottrell's weld on the broken idler was defective in design because it was a metal inert gas (MIG) weld. He testified MIG welds are more superficial than other types of welds; while a MIG weld creates a nicer surface for painting, it can result in an inadequately weak attachment when used in a manual chain and ratchet system such as that designed by Jack Cooper.

Dr. Micklow also testified the manual chain and ratchet tie-down system used on the trailer required force greater than what the welds can withstand when properly tightened. According to Dr. Micklow, safer alternative designs have been available for at least 20 years. This conclusion was based on industry reports, testing data, and prior patent applications submitted by various entities, including Cottrell itself.

Dr. Micklow further testified that at an unknown point the Cottrell MIG weld in question had been repaired using an arc welder. An "arc weld" provides a stronger, though lumpier, weld because it fuses metals at a deeper thickness. But, according to Dr. Micklow, as supported by Mr. Johnson's photographic evidence, this arc weld was negligently made because it went only partially around the circumference of the idler, leaving a weak spot at the bottom of the idler which was attached to the trailer only by the more superficial original MIG weld. Dr. Micklow said the bottom of the idler is the part that sustains the most stress when a vehicle is being secured, and the idler failure began at this weak spot.

Mr. Johnson presented evidence that Auto Handling knew or should have known about the alleged defects in the design of the manual chain and ratchet system in general, the idler in particular, and the defective attempt to repair the idler with a bad arc weld, and that it failed to warn him or his employer about these defects. He also attempted to show that Auto Handling itself had made the defective arc weld repair attempt. Auto Handling denied it performed the weld repair, denied it undertook any duty to warn of flaws in a chain and ratchet system it took no part in designing, and denied it undertook inspection for other defects. At the conclusion of Mr. Johnson's case the trial court directed

a verdict in favor of Auto Handling on all of Mr. Johnson's theories against it.

The trial court denied Cottrell's motion for directed verdict. It found Mr. Johnson made a submissible case against Cottrell on his claims of negligence, strict liability product defect, and strict liability failure to warn as to the allegedly defective idler and manual chain and ratchet system. It overruled Cottrell's objections that Instruction 10, the negligence instruction offered by Mr. Johnson, was improperly based on MAI 17.02 rather than on MAI 25.09, and the case was submitted only against Cottrell.

■ The jury returned a verdict in favor of Cottrell on Mr. Johnson's strict product liability claim involving the allegedly defective idler and chain and ratchet system. Mr. Johnson did not preserve claims of error in entry of that verdict, and this Court does not further address it.[2] The jury returned verdicts in favor of Mr. Johnson on his claims against Cottrell of negligence as submitted in Instruction 10 and of strict liability failure to warn as submitted in Instruction 13 in regard to the broken idler and chain and ratchet system. The jury found Cottrell 55 percent at fault and Mr. Johnson 45 percent at fault on the negligence submissions in Instruction 10, and Cottrell 49 percent at fault and Mr. Johnson 51 percent at fault on his strict liability failure to warn claim. The jury found Mr. Johnson suffered damages of $2,091,513.45 from the idler accident.

The trial court overruled Cottrell's motion for judgment notwithstanding the verdict and for new trial based on alleged errors in Instruction 10. The trial court did not enter judgment based on the finding in Mr. Johnson's favor in Instruction 13. It entered judgment against Cottrell only on the negligence verdict submitted in Instruction 10 because the jury found Mr. Johnson only 45 percent at fault on his negligence claims. Accordingly, the trial court reduced the jury's damage verdict by 45 percent and entered judgment against Cottrell on the negligence verdict for $1,150,332.40. Cottrell appealed the judgment, and Mr. Johnson cross-appealed the directed verdict in favor of Auto Handling. After decision by the court of appeals, this Court granted transfer.

## II. STANDARD OF REVIEW

■ Review of the trial court's decision to sustain or overrule a motion for directed verdict depends on "whether the plaintiff made a submissible case." *Dodson v. Ferrara, 491 S.W.3d 542, 551 (Mo. banc 2016).* And "[w]hether the plaintiff made a submissible case is a question of law" this Court reviews de novo. *Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011).* "Whether a jury is properly instructed is a matter of law" this Court also reviews de novo. *Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 90 (Mo. banc 2010).*

## III. PLAINTIFF MADE A SUBMISSIBLE CASE AGAINST AUTO HANDLING ON THE THEORY OF NEGLIGENT MAINTENANCE AND INSPECTION

■ A case is submissible when each element essential to liability is supported

---

2. Mr. Johnson's only Point Relied On addressing submissions against Cottrell alleged only that it was error to categorically exclude evidence of accidents involving the chain and ratchet system "because such evidence was admissible to show the danger of its product"

and in order to show notice and liability for punitive damages. This was not sufficient to preserve the question whether it was error to enter judgment on the jury verdict in favor of Cottrell on Mr. Johnson's strict liability design defect theory.

by legal and substantial evidence. *Dodson, 491 S.W.3d at 551*. This Court "views the evidence in a light most favorable to the plaintiff," including "all reasonable inferences while disregarding all contrary evidence and inferences." *D.R. Sherry Const. v. Am. Family Mut. Ins., 316 S.W.3d 899, 904 (Mo. banc 2010)*.

■ To make a submissible case for negligence, a plaintiff "must plead and prove that the defendant had a duty to protect [him] from injury, that the defendant breached that duty, and that the defendant's failure directly and proximately caused her injury." *Robinson v. Health Midwest Dev. Grp., 58 S.W.3d 519, 521 (Mo. banc 2001)*. Mr. Johnson's claims of negligence against Auto Handling were: negligent repair of the idler with a defective arc weld; negligent failure to warn of the dangerous nature of Cottrell's manual chain and ratchet system; and negligent inspection and maintenance of the trailer by Auto Handling.

### A. Defective Arc Weld Theory

■ The trial court did not err in directing a verdict in favor of Auto Handling on Mr. Johnson's claims that it made the defective arc repair weld. The evidence at trial showed Jack Cooper produced and kept a set of maintenance and repair records for all of the tractor trailers in its fleet, including the one driven by Mr. Johnson. Each time repair or maintenance was performed, the records included: the date, a code identifying the driver, a code identifying the tractor trailer (either the tractor or trailer code or both), the odometer reading, the location of the repair facility (which would identify whether it was a terminal that employed exclusively Auto Handling or Jack Cooper mechanics), and codes pertaining to the type of work done. Dr. Micklow testified he reviewed the complete set of records for the tractor trailer and found no record of any repair arc weld

being made on the idler in question prior to the accident, even though he said his examination showed that an inadequate repair arc weld in fact had been made over the original allegedly inadequate MIG weld.

Mr. Johnson testified he had been the driver of this tractor trailer since 2004, just after it was put into service by Jack Cooper, and he was familiar with its maintenance and repair history. Mr. Johnson testified that all of his repairs were done at Jack Cooper terminals either by Jack Cooper mechanics or Auto Handling mechanics. His base terminal was in Fort Wayne, Indiana, but because that terminal had no repair facilities, the majority of repairs occurred at Jack Cooper's Fairfax location, which employed only Jack Cooper mechanics. He testified he sometimes brought the tractor trailer to the Wentzville, Missouri facility for preventive maintenance and repairs and Wentzville was one of the facilities employing only Auto Handling mechanics. Another hauler also testified Auto Handling mechanics at the Wentzville terminal performed "an enormous amount" of repairs to Cottrell idlers.

Mr. Johnson said Jack Cooper repairs were always recorded in the maintenance records, but he knew of at least one occasion when Auto Handling made repairs on his tractor trailer without recording them. He concluded that if any repair was made without being documented, it was most likely performed by Auto Handling.

Dr. Micklow and Mr. Johnson both testified that Jack Cooper's records did not document a repair to the idler. In fact, although Mr. Johnson claimed he knew all about his tractor trailer and all repairs made on it, he also testified he had been unaware of the arc weld repair to the idler, and he was not familiar with Jack Cooper's repair and maintenance records system

and had never seen the repair and maintenance records prior to this litigation. In light of these facts, his speculation that Auto Handling must have made the repair weld because there would have been a record of it if the repair had been made by Jack Cooper and he did not think anyone else would have repaired the tractor trailer was just that, speculation. The jury would have no method other than speculation to determine whether Auto Handling made the arc repair weld. The trial court, therefore, did not err in directing a verdict for Auto Handling on this theory.[3]

### B. Duty of a Supplier Under Restatement (Second) of Torts Sections 388, 403, and 404

■ Additionally, the trial court did not err in directing a verdict for Auto Handling on the theory that it was responsible for warning Jack Cooper or Mr. Johnson of Cottrell's allegedly defective design of the manual chain and ratchet system under Restatement (Second) of Torts sections 388, 403, and 404 (1965).

Missouri has adopted section 388, which describes supplier negligence for failing to warn of a dangerous condition of a chattel. *Morris v. Shell Oil Co.,* 467 S.W.2d 39, 42 (Mo. 1971); *Hill v. Gen. Motors Corp.,* 637 S.W.2d 382, 384 (Mo. App. E.D. 1982). Comment c says section 388 extends "supplier" liability to "one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it. (See § 403.)"

■ Mr. Johnson argues that Auto Handling is liable to it under section 388, comment c, because either it made the defective repair weld or it would have been aware of the defective weld if made by another when it returned the tractor trailer back to Jack Cooper after undertaking other inspections and repairs. It claims this is enough for liability under section 388(c). Mr. Johnson misreads comment c and section 388 generally. The quoted language refers to knowledge of defects related to the work for which the defendant was employed. Mr. Johnson has failed to show a defect was introduced because of the work Auto Handling was employed to do. By its terms section 388 does not impose liability on a repairer for "general dangers associated with a product unrelated to the specific repair work performed." *Menz v. New Holland N. Am., Inc.,* 440 F.3d 1002, 1005 (8th Cir. 2006). This is made even clearer by comment (c)'s cross-reference to section 403 of the Restatement. Section 403 provides, "One who as an independent contractor makes, rebuilds, or repairs a chattel for another and turns it over to the other, knowing or having reason to know *that his work* has made it dangerous for the use for which it is turned over, is subject to the same liability as if he supplied the chattel." *Restatement (Second) of Torts § 403 (1965)* (emphasis added). Comment b to section 403 makes clear that this liability applies "only where the contractor knows or has reason to know that *the work which he has done in* making, rebuilding, or *repairing the chat-*

---

**3.** Mr. Johnson also presented evidence that 31 pages of the Jack Cooper repair and maintenance records were missing from Cottrell's Exhibit 35 and argued they could have contained the records of the repair, although Auto Handling presented evidence that any supposed "gap" occurred *after* the accident in question and so was irrelevant. Cottrell also suggested the "gap" was a simple change in numbering between records listed by the trailer code and records listed by the tractor code. As no party filed Exhibit 35 as part of the record on appeal, this Court cannot consider Exhibit 35 in determining which explanation is accurate or whether Exhibit 35 would have supported Mr. Johnson's claim that Auto Handling made the defective weld.

*tel* has made it unsafe for use." *Id.* (emphasis added). Liability under section 403, like under section 388, thereby is limited to risks created by the repair work done by defendant and does not create an obligation to warn about unrelated defects. Liability under section 404 is similarly limited. But Mr. Johnson failed to make a submissible case that Auto Handling made the allegedly defective arc weld or that its work otherwise created the danger. Sections 403 and 404 do not provide a basis for liability on the part of Auto Handling either.

### C. Negligent Maintenance and Inspection

■ Mr. Johnson also presented evidence the tractor trailer was required to undergo periodic preventive maintenance inspections performed by both Jack Cooper and Auto Handling mechanics. Mr. Johnson testified Auto Handling mechanics at Wentzville performed this preventive maintenance and the defective arc weld repair would have been visible to any mechanic in the pit below the tractor trailer inspecting it and would not have been visible to the driver or others who did not see the tractor trailer from below.

Auto Handling put on contrary evidence that it did not undertake general maintenance and repairs or that it could or should have seen the defective welds if it had done so. But that was a question for the jury. Based on the testimony of Mr. Johnson and other drivers, as well as the testimony of Dr. Micklow that the original idler weld and subsequent repair weld were both defective, a jury reasonably could have inferred that Auto Handling mechanics were tasked with performing

periodic maintenance and inspections and negligently failed to discover the defective nature of the original or repair welds. It is not for this Court, or the trial court, to weigh the strength of this evidence.[4] The trial court should have submitted this negligent maintenance and inspection claim to the jury. The directed verdict in favor of Auto Handling, therefore, is reversed. The Court now turns to the claims against Cottrell.

### IV. THE CLAIM OF NEGLIGENT DESIGN OR FAILURE TO WARN OF A PRODUCT DEFECT AGAINST COTTRELL HAD TO BE SUBMITTED USING MAI 25.09

#### A. Theories of Liability

MAI expressly requires claims of strict product liability for defective manufacture or design be submitted under MAI 25.04, claims of strict liability for failure to adequately warn be submitted under MAI 25.05, and claims of negligent manufacture, design, or failure to warn be submitted under MAI 25.09.[5]

Mr. Johnson submitted his claims against Cottrell of strict product liability in Instruction 7 based on MAI 25.04. He submitted his claims of strict liability failure to warn in Instruction 13 based on MAI 25.05. But, over Cottrell's objection, he refused to utilize an instruction based on MAI 25.09 for his negligence claims. He instead submitted his negligence claims in Instruction 10, based on MAI 17.02.

Chapter 17 of MAI is titled "Verdict Directing—Motor Vehicles," and MAI 17.02 is used for submitting multiple negli-

---

4. *Dodson, 491 S.W.3d at 552* ("If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper.").

5. All MAI citations are to Missouri Approved Instructions (Civil) (7th ed. 2012).

gent acts involving motor vehicles.[6] Most of the rest of chapter 17 sets out how to submit different types of alleged negligence involving motor vehicles, although, as Mr. Johnson notes, courts have used chapter 17 as the basis for instructing on general theories of negligence other than motor vehicle accidents.

While Mr. Johnson does not cite any case in which chapter 17 was utilized as the basis for a products liability negligence instruction, he nonetheless submitted his negligence claims in an instruction based on MAI 17.02. Instruction 10 stated:

On the claim of [Johnson] for personal injury based on negligence of [Cottrell], you must assess a percentage of fault . . . if you believe:

First, either

 (a) [Cottrell] failed to review and analyze injury and testing data; or

 (b) [Cottrell] failed to supply the trailer with alternative vehicle securement systems including straps, wheel chocks, cables, enclosed idlers, a hydraulic tie-down system, a pneumatic tie-down system, or a worm-gear tie-down system; or

 (c) [Cottrell] failed to share industry reports and injury data with [Johnson]'s employer; or

 (d) [Cottrell] designed a chain and ratchet system that required excessive force during operation; and

Second, [Cottrell], in any one or more of the respects submitted in paragraph First, was thereby negligent; and

Third, such negligence directly caused or directly contributed to cause damage to [Johnson].

Mr. Johnson argued MAI 17.02 was the appropriate instruction on which to base his negligence submissions because he was alleging multiple theories against Cottrell. He argued that while MAI 25.09 normally is used for products liability claims sounding in negligence, it was inappropriate here because he wanted to submit more than one theory and general as well as products liability theories. He decided to model Instruction 10, therefore, on MAI 17.02. Mr. Johnson's submission of Instruction 10 was erroneous for multiple reasons.

■■■■■ To the extent Mr. Johnson wanted to submit that Cottrell independently owed him a duty to review or analyze reports or share information with Jack Cooper, submissions not authorized by MAI 25.09, he was submitting a not-in-MAI instruction. Mr. Johnson's approach created two major problems. First, a party may utilize a not-in-MAI instruction if no MAI instruction is on point, but that instruction must "be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." *Rule 70.02(b)* (emphasis added). Second, a not-in-MAI instruction must "follow[ ] substantive law by submitting the ultimate facts necessary to sustain a verdict." *Seitz v. Lemay Bank & Trust, 959 S.W.2d 458, 462 (Mo. banc 1998)* (quotation omitted). "A proper instruction submits only the ultimate facts, not evidentiary details, to avoid undue emphasis of certain evidence, confusion, and the danger of favoring one party over another." *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const., 168 S.W.3d 488, 497-98 (Mo. App. E.D. 2005)*. This means the theory submitted must be one recognized under Missouri law and the ultimate facts necessary for recovery un-

---

**6.** Paragraph Third of Instruction 10 comes from MAI 19.01, an optional modification from the chapter on verdict directing for multiple causes of damage.

der that theory must be included in the instruction.

■ Instruction 10 fails in both of these respects. More specifically, Paragraphs 1(a) and 1(c) presume Cottrell had a duty to Mr. Johnson or other end users to review and analyze data and share it with employers. Mr. Johnson has identified no basis for such a duty except and unless such failures led to defective manufacture, design, or warning about its product.[7] He has not shown that any research and communications deficiencies were separate and independent bases of liability in themselves. The substantive law does not allow recovery for bad reading and analysis in the abstract.

This reflects the second problem with Instruction 10—it submitted not separate bases of liability, but merely evidence supporting the claims of negligent warning or design. But Rule 70.02 is clear that an instruction "shall not submit to the jury or require findings of detailed evidentiary facts." Not-in-MAI instructions must be reviewed to ensure they submit "ultimate facts required to sustain a verdict." *Seitz, 959 S.W.2d at 462.*[8] That was not done here. Evidence showing Cottrell failed sufficiently to review and analyze data was relevant only because it led to an inadequate design or warning; it was that ultimate fact, not the evidentiary detail, which should have been submitted as a design defect or failure to warn claim using MAI 25.09. Similarly, evidence showing Cottrell failed sufficiently to communicate its research and analysis to its customers and that this led to his accident was relevant only because it led to an inadequate warning; it was that ultimate fact, not the evidentiary detail, which should have been submitted as a failure to warn claim under MAI 25.09. He could not submit evidentiary details as separate theories of negligence. *Id.*

■ Paragraphs 1(b) and 1(d) were also improper in that they unequivocally ask the jury to determine whether the chain and ratchet system was defectively designed, yet they did so in a general negligence instruction rather than through use of the MAI-approved instruction for negligent design defect cases. Rule 70.02(b) provides, "[w]henever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." *See also Templemire v. W & M Welding, Inc., 433 S.W.3d 371, 376 (Mo. banc 2014)* (where an applicable MAI states the substantive law, failure to use it is error).

Mr. Johnson says that sometimes the available MAI instructions are not adequate and in such cases it is permissible to prepare a not-in-MAI instruction. He notes that while MAI 17.02 is written for motor vehicle cases, it can provide the model for other negligence submissions, citing as examples cases such as *Joyce v. Nash, 630 S.W.2d 219, 223 n.1 (Mo. App. W.D. 1982)*,

---

7. Mr. Johnson cites *Schenebeck v. Sterling Drug, 423 F.2d 919 (8th Cir. 1970)*, and *Braun v. Roux Distributing Co., 312 S.W.2d 758, 763 (Mo. 1958)*. But neither of these cases describe a stand-alone duty to keep abreast of and communicate industry reports and safety data. They are both negligent failure to warn cases.

8. *See also Hiers v. Lemley, 834 S.W.2d 729, 735-36 (Mo. banc 1992)* (affirmative converse instructions are disfavored because they tend to submit unnecessary evidentiary details instead of ultimate issues in violation of Rule 70.02); *Twin Chimneys Homeowners Ass'n v. J.E. Jones Const., 168 S.W.3d 488, 498 (Mo. App. E.D. 2005)* ("The test is whether the instruction follows the substantive law and can be readily understood by the jury.").

and *Trident Group v. Mississippi Valley Roofing*, 279 S.W.3d 192, 199-200 (Mo. App. E.D. 2009).

*Joyce*, *Trident* and similar cases correctly show that when there is no applicable MAI, it is proper to follow the format of the most applicable MAI instruction in preparing the parties' instructions. *Joyce*, 630 S.W.2d at 220-221 (negligent locking of patrons in compound after hours where they were attacked by guard dogs); *Trident*, 279 S.W.3d at 199-200 (negligent roof repair). Here, by contrast, there is an MAI applicable to product liability negligence claims. Titled "Product Liability—Negligent Manufacture, Design, or Failure to Warn," MAI 25.09 states:

> Your verdict must be for plaintiff if you believe:
>
> First, defendant [manufactured] ·[designed] the *(describe product)*, and
>
> Second, the *(describe product) (here describe alleged defect or hazard)*, and
>
> Third, defendant failed to use ordinary care to [either] [[manufacture] [design] the (describe product) to be reasonably safe] [[or] adequately warn of the risk of harm from (here describe alleged defect or hazard) ], and
>
> Fourth, as a direct result of such failure, [in one or more of the respects submitted in paragraph Third,] plaintiff sustained damage.

*Id.* (footnotes omitted). Mr. Johnson could have submitted all·of his claims of negligent design, manufacture, and failure to warn using this instruction. Indeed, while Mr. Johnson objects that he wanted to submit multiple claims at one time and therefore had to use MAI 17.02, the Notes on Use to Paragraph Third of MAI 25.09 make it clear that negligent design, manu-

facture, and warning may be submitted in the same instruction in the disjunctive, just as is the case under MAI 17.02.[9] MAI 25.09 was quite adequate for submission of all of Mr. Johnson's negligent product liability claims. Its use, therefore, was mandatory.

 Failing to submit an applicable MAI "shall constitute error, its prejudicial effect to be·judicially determined, provided that objection has been timely made pursuant to Rule 70.03." *Rule 70.02(c)*. "[S]uch errors are presumed to prejudice the defendant unless it is clearly established ... that the error did not result in prejudice." *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 219 (Mo. banc 2012) (quotation omitted).

Here, Cottrell timely objected to the submission of Mr. Johnson's products liability theories under an instruction based on MAI 17.02 and argued that MAI 25.09 should be the basis for the submission. It also argued that the·specific instances of alleged negligence submitted did not submit recognized theories of liability. Cottrell adequately preserved its objections to Instruction 10. The burden, therefore, is on Mr. Johnson to show that the error in submitting that instruction was not prejudicial. *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 786 (Mo. banc 1977). He has failed to meet that burden. Instruction 10 did not accurately state the law and confused and misled the jury by permitting it to find for the plaintiff based on evidentiary rather than ultimate facts. Furthermore, Instruction 10 failed to submit the required elements of a defective design or failure to warn claim. The judgment in favor of Mr. Johnson on his negligence claims against Cottrell is reversed.

### B. Remedy

---

9. "Select one or both phrases. If both phrases are used, they must be submitted in the disjunctive and each must be supported by the

evidence." *MAI 25.09, note 4*. "This instruction submits three improper acts in the disjunctive." *MAI 17.02, note 2*.

The question remains whether this case must be remanded for a new trial against Cottrell at the same time as the retrial against Auto Handling for the reasons already noted. Cottrell argues this Court should reverse the judgment against it outright because the jury already has rejected his product liability design defect claim submitted in Instruction 7. Cottrell says that if properly submitted using MAI 25.09, Mr. Johnson's negligent product liability claim in Instruction 10 simply would have duplicated the rejected Instruction 7 product liability design defect claim, for proof of negligent design defect requires proof of the same elements necessary to prove strict liability design defect, plus proof of negligence. Therefore, in finding for Cottrell in Instruction 7, the jury already rejected Mr. Johnson's negligent design defect claims even had they been properly submitted. In support, Cottrell cites to cases such as *Jablonski v. Ford Motor Co.*, 353 Ill.Dec. 327, 955 N.E.2d 1138, 1155 (Ill. 2011), which hold that the two theories can be effectively identical.

This Court rejected a similar argument in *Moore* 332 S.W.3d at 764. As *Moore* stated, "Although negligence and strict liability theories are separate and distinct, the same operative facts may support recovery under either theory, particularly in a failure to warn case." *Id.* (quotation omitted). While certainly the facts and alleged failures underlying both strict liability and negligence claims are very similar, the elements of those claims are not identical. Strict liability for product defect requires proof the product "was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use," proof the product "was used in a manner reasonably anticipated," and proof "plaintiff was damaged as a direct result of such defective condition as existed when the [product] was sold." *MAI 25.04.* The

focus is on the product and its condition when sold, not on the manufacturer's conduct. *Moore, 332 S.W.3d at 764.*

By contrast, proving negligent failure to warn—and by analogy negligent design defect—"focuses on what the manufacturer knew rather than on the product." *Id.* MAI 25.09, applicable to negligent manufacture, design, or warning as to product cases, requires the jury to consider whether defendant manufactured the product, whether the product had a particular defect, whether "defendant failed to use ordinary care" to design the product "to be reasonably safe ... [or] adequately warn of the risk of harm," and whether "as a direct result of such failure, [in one or more of the respects submitted in paragraph Third,] plaintiff sustained damage."

This Court reaffirms its holding that negligence and strict liability theories of product liability are separate and distinct theories. Finding against the plaintiff on a strict liability product defect theory does not require rejection of plaintiff's claims of negligent design, manufacturing, or failure to warn.

That said, this Court also rejects Mr. Johnson's argument that his claims of strict liability failure to warn and negligent failure to warn are so distinct that error as to one could not have affected the jury's verdict against Cottrell on the other. His claims that Cottrell was negligent in failing to share injury data about the idler and chain and ratchet system depend on the same allegations made in his strict liability failure to warn claim. Mr. Johnson claims Cottrell had a duty to warn him of the allegedly defective nature of the idler welds, and Mr. Johnson's claims for failure to warn and for negligent and strict liability design defect both depend on proof of the inadequacy of the design and warnings of the idler and chain and ratchet system in general and on Cottrell's warnings

about those dangers in particular. This is particularly likely to have caused confusion in light of Instruction 10's erroneous identification of specific evidentiary facts regarding Cottrell's awareness of the data and risks generally. The court's error in telling the jury in Instruction 10 that liability may be premised on a failure to conduct and communicate adequate research—allegations that in effect allege a failure to warn—may also have affected the jury's verdict and determination of comparative fault on strict liability failure to warn. Further, this Court is reversing the directed verdict in favor of Auto Handling and remanding on one of Mr. Johnson's negligence claims against it.

▬▬▬ This Court has the authority to "award a new trial or partial new trial" and to reverse the trial court judgment "in whole or in part." *Rule 84.14*. When two claims are "inextricably bound together," error in the trial court's handling of one claim may require retrial on both. *Portell v. Pevely Dairy Co.*, 388 S.W.2d 790, 793-94 (Mo. 1965). This is particularly true when the error may affect the jury's determination of comparative fault. *Barnes v. Tools & Mach. Builders, Inc.*, 715 S.W.2d 518, 521 (Mo. banc 1986) ("Unless it can be said that this instruction did not contribute to the general verdict for the defendant reversal would be required."). On the other hand, when claims are "full and complete" and separate from each other, a partial new trial may be appropriate. *Savage v. Kansas City Power & Light Co.*, 515 S.W.3d 778, 785-86 (Mo. App. W.D. 2017). As the court of appeals has explained, however:

if the whole of the issues are so interrelated and interdependent that the trial of the one issue or feature necessarily involves the trial of the other, then the whole case, if before the appellate court, should be remanded for a new trial so that the rights and liabilities of the respective parties may be tried out and adjudicated at one and the same time, by the same jury, and upon the same evidence, to the end that inconsistent findings may thus be avoided.

*Comegys v. Chrysler Credit Corp.*, 577 S.W.2d 873, 880 (Mo. App. E.D. 1979); see also *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 626, 628 (Mo. App. E.D. 1994) (justice required a new trial as to all other issues because they were interrelated with the claim submitted by an erroneous negligence verdict director).

▬▬▬ Mr. Johnson's strict liability failure to warn claim against Cottrell as submitted in Instruction 13 was so intertwined with his allegations against Cottrell of a negligent failure to warn or "share" information in Instruction 10 and with his claims of negligence against Auto Handling involving the same alleged defect, that the strict liability failure to warn claim should be retried on remand along with Mr. Johnson's claims against Auto Handling and his negligence claims against Cottrell.[10]

### C. Evidentiary Issues on Remand

▬▬▬ Cottrell also argues that Mr. Johnson would not have heeded any warning had it been given. *Moore* involved a similar claim that a warning by Ford about the insufficiency of its seats to support persons over a certain weight would not

---

10. Mr. Johnson also suggests, in the argument section of his brief, that any error affecting liability should not require retrial of damages under principles of collateral estoppel and issue preclusion. Those doctrines do not apply to remand for retrial in the same case,

see, e.g., *State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 734 (Mo. banc 2017) and in any event, for the reasons noted, this Court finds that the issues are intermingled and the claims as a whole must be retried.

have been heeded and therefore its failure to warn of this danger was not actionable. *332 S.W.3d at 754-55, 762-63. Moore* held there is a presumption that a warning would have been heeded if given, and that where the defendant seeks to rebut the presumption, the plaintiff may testify as to whether he or she would have heeded an adequate warning. *Id. at 763.*

Cottrell presented evidence Mr. Johnson did not read the warning decals on the tractor trailer or any warnings in the manual and argued this precluded a failure to warn claim because any warning given also would have been ignored. Mr. Johnson's evidence showed he did not say he did not see the decals, but rather that he was not given the owners' manual and so did not see warnings in it. Further, he says, the decals and manual only warned against using excessive force. Neither the decals nor the missing manual explained what constituted excessive force, and, therefore, they were inadequate to warn him about the dangers of tying down the vehicle as he did. This raised a question of fact for the jury on the issue of failure to warn. *See id. at 761-62; Georgescu v. K Mart Corp., 813 S.W.2d 298, 299 (Mo. banc 1991).* Any more specific analysis of the evidence would be pointless as the evidence may be different at any trial following remand.

 Similarly, this Court declines to analyze in detail Mr. Johnson's claim that the trial court abused its discretion in refusing to admit evidence of other accidents involving Cottrell's chain and ratchet tie-down system unless those accidents specifically involved a failed idler. Mr. Johnson argues that other accidents involving failure due to use of excessive force are relevant to his claim that the whole chain and ratchet system was defectively designed because it required excessive force, and that Cottrell had notice of the defect. Cottrell responds that Mr. Johnson simply offered "boxes" of other incidents and insufficiently showed they were substantially similar.

 Trial courts have "wide discretion on issues of admission of evidence of similar occurrences." *Richardson v. State Highway & Transp. Comm'n, 863 S.W.2d 876, 881 (Mo. banc 1993).* "This Court's review is limited to whether the trial court determined that the evidence was relevant and that the occurrences bore sufficient resemblance to the injury-causing incident, while weighing the possibility of undue prejudice and confusion of issues." *Newman v. Ford Motor Co., 975 S.W.2d 147, 151 (Mo. banc 1998)* (quotation omitted). Particularly where the evidence is sought to be admitted on the issue of notice, "the similarity in the circumstances of the accidents need not be completely symmetrical." *Pierce v. Platte-Clay Elec. Co-op., 769 S.W.2d 769, 774 (Mo. banc 1989).* Courts should consider whether each occurrence is of a "like character," whether it occurred under similar circumstances, and whether it had the same cause. *Hess v. Chicago, Rock Island & Pac. R.R., 479 S.W.2d 425, 431 (Mo. 1972).*

This Court cannot predict which, if any, of the other incidents Mr. Johnson may seek to introduce at trial following remand. In the event he does, the trial court should apply these well-settled rules governing their admissibility.[11]

## V. CONCLUSION

It was error to grant the motion for directed verdict in favor of Auto Handling because one of Mr. Johnson's negligence

---

11. Because the evidence at any new trial will be different, this Court need not address whether the alleged error in excluding evidence of other incidents may have affected the jury's rejection of punitive damages against Cottrell.

claims was submissible, as evidence in the record and the reasonable inferences therefrom supported the elements of his claim of negligent maintenance and inspection of the tractor trailer. Furthermore, use of MAI 25.09 is mandatory for product liability negligence claims. Instruction 10 submitting negligent design defect using a modified version of MAI 17.02 was, therefore, error. Prejudice is presumed, and Mr. Johnson was unable to discharge his burden of proving that submitting Instruction 10 was not prejudicial.

For the foregoing reasons, and because of the intertwined nature of the evidence and the various theories against the two defendants, the judgment is reversed and the case remanded for retrial as to the negligent maintenance and inspection claim against Auto Handling and as to Mr. Johnson's negligence claims and strict liability failure to warn claim against Cottrell.

Fischer, C.J., Draper, Wilson, Russell and Breckenridge, JJ., concur.

Powell, J., not participating.