**Lance HOBBS, Appellant,**

v.

**BOY SCOUTS OF AMERICA, INC. and Jere Ratcliff, Respondents.**

**Heart of America Council, Inc., Respondent**

**Richard Green, Defendant.**

**No. WD 63342.**

Missouri Court of Appeals, Western District.

Nov. 16, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2004.

Application for Transfer Denied Jan. 25, 2005.

David H. Bony, Kansas City, MO, for appellant.

Jack T. Bangert, Robert Andrew Henderson, Kansas City, MO, for respondent.

Before PATRICIA BRECKENRIDGE, P.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

JAMES M. SMART, JR., Judge.

Lance Hobbs appeals the summary judgment granted by the trial court in his action against the Boy Scouts, the Heart of America Council, and a national officer of the Boy Scouts. The trial court determined that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. Because there was no dispute as to the basic underlying facts, and because Hobbs failed to articulate a viable theory of liability against any of the defendants, we affirm the judgment.

### Background

Lance Hobbs, a former participant in the Boy Scouts, was sexually molested by Earl Fleer, an assistant scoutmaster, in 1989. Hobbs was eleven years old at the time. Fleer also molested several other boys in separate incidents in 1989 and 1990. In 1990, the molestations were discovered. Fleer pleaded guilty to the mo-

lestations of Hobbs and others and was sentenced to prison.

Hobbs later brought an action against the Boy Scouts of America, the Heart of America Council of the Boy Scouts, and Jere Ratcliff, an officer of the Boy Scouts of America. Plaintiff did not sue the local troop officers or the chartering and sponsoring organization of the local troop with which he was associated. Hobbs alleged that Fleer was assistant scoutmaster with Troop 52 in Kansas City. In his pleadings and in pre-trial discovery, Hobbs alleged that Fleer picked him up on October 27, 1989, to take him to a weekend campout. Instead of proceeding to the campout location, Fleer took Hobbs to a restaurant, then to Fleer's apartment (where the abuse took place), then to the house of a friend of Fleer's, then to Worlds of Fun, then back to the friend's house, then again to a restaurant, then finally, approximately 24 hours after first picking him up, to the scouting campout, where Hobbs participated in the remainder of the scouting event.

Count I of Hobbs' petition alleged that his damages were caused by a failure to warn or educate Hobbs about the risk of molestation by scout leaders. Count II alleged that the "scouting program" was a "product" under the product liability laws and sought recovery under a theory of strict liability for defective product. Count III, also a product liability claim, sought recovery under the theory of strict liability for failure to warn of an unreasonable risk. Following substantial discovery, and after the deadline for disclosure of expert witnesses, Defendants moved for summary judgment on the ground that there was no dispute of material fact, and that Defendants were entitled to judgment as a matter of law. The court granted Defendant's motion for summary judgment. Plaintiff Hobbs appeals.

At the outset, it should be noted that Plaintiff does not claim that Fleer was an agent of any of the defendants. Plaintiff did not seek recovery on a theory of "respondeat superior" liability. Plaintiff does not claim that Defendants had any control over the activities of Fleer. Plaintiff also does not claim that defendants had knowledge that Fleer was a pedophile. Nor does he claim that Defendants were negligent in approving the application of Fleer to become a scout leader. Plaintiff's claim, in essence, is that the Boy Scout program attracts pedophiles; that Earl Fleer was attracted to scouting and to Hobbs because Fleer was a pedophile; and that Defendants were at fault because they knew of the unreasonable risk of children being abused by pedophiles and did not warn Plaintiff Hobbs about pedophiles or educate Plaintiff Hobbs about improper scout leader behavior and what to do about it. Plaintiff's claims include the allegations that Defendants are liable under product liability law for providing a defective or unreasonably dangerous product without proper warning, resulting in injury to Plaintiff.

It is clear that neither the Boy Scouts of America, nor the Heart of America Council, nor Jere Ratcliff has any day-to-day control over the activities of the local chartering organizations. Thus, these defendants had no supervisory authority over the decision to hold a camping trip, any transportation to the trip, or any activity of Earl Fleer. The only organization with any supervisory authority with regard to specific activities was the local chartering organization, which was not joined to the lawsuit.

After consideration of the arguments for and against summary judgment, the trial court rejected the claim of negligent failure to warn and to educate, finding that the record shows that the molestation did

not take place during the course and scope of an authorized scouting activity. The court found no material issue of fact was disputed in this regard. The court further found that the Boy Scout program as described in Plaintiff's petition does not fit within "any recognized definition of a product." Therefore, the court found, Plaintiff has no cognizable negligence or strict liability theory that would provide a basis for recovery. The court granted summary judgment to Defendants.

On appeal, Plaintiff Hobbs concedes that he cannot recover under this theory unless the abuse took place during an authorized scouting activity. However, he contends that the court erred in regard to Count I of Plaintiff's petition in finding as a matter of law that the injury in question was not during an authorized scouting activity. This is so, Plaintiff asserts, because there were genuine issues of material fact that were in dispute in relation to that issue. Second, Plaintiff contends that the trial court erred with regard to Count II of the petition in determining that the scouting program was not a product because there remained disputed issues of material fact about that determination as well. Because we conclude, after consideration of the record and the arguments, that there were no material facts in dispute, and that Defendants were entitled to judgment as a matter of law, we affirm the summary judgment.

### Summary Judgment

■ Rule 74.04 provides that summary judgment may be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." The determining factor in the summary judgment adjudication is the right to judgment as a matter of law based on the undisputed material facts. *See ITT Commercial Fin.*

*Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 380 (Mo. banc 1993).

### Negligent Failure to Warn

■ As to Count I of the petition, Defendants point out that Plaintiff concedes that liability cannot be established under Count I for negligent failure to warn and educate unless the molestation took place during a scouting activity. Although Plaintiff does not explicitly make such a concession, we note that Plaintiff implicitly makes such a concession. In each instance where the issue is discussed, Plaintiff insists only that the molestation *did* occur during an authorized scouting activity. Plaintiff makes no effort to argue that even if it did *not* occur during a scouting activity, liability could still attach to Defendants. We will, therefore, consider that issue to be conceded. Thus, our focus is strictly on whether the trial court could say as a matter of law that the injury did not occur in the course of an authorized scouting activity.

The basic facts are undisputed. It is only the conclusion to be drawn from the facts that is disputed. Accordingly, the trial court had an issue of law to resolve— the issue of whether, based on these basic facts, the law will regard the activities of Fleer and Hobbs prior to their arrival at the campout as having taken place during an authorized scouting activity.

The undisputed facts are as follows:

- On October 27, 1989, the Boy Scout Troop of which Lance Hobbs was a member was conducting an overnight campout at H. Roe Bartle Campground.
- On October 27, 1989, Earl Fleer was an adult leader of Boy Scout Troop 52.
- On Friday evening, October 27, 1989, Earl Fleer picked up Lance Hobbs at Hobbs' home.

- After Fleer picked up Hobbs on Friday evening, October 27, 1989, Fleer took Hobbs to a restaurant.
- On Friday evening, October 27, 1989, after going to the restaurant, Fleer took Hobbs to Fleer's apartment.
- While Plaintiff was at Fleer's apartment, during the evening of October 27 or early morning of October 28, Fleer molested Hobbs.
- On Saturday morning, October 28, 1989, Fleer took Hobbs to "Bradley's" house, but Bradley was not at home.
- Fleer and Hobbs then left Bradley's house, and Fleer took Hobbs to Worlds of Fun, doing so before Noon on Saturday, October 28, 1989.
- Fleer and Hobbs left Worlds of Fun, and Fleer then again took Hobbs to "Bradley's" house, where Fleer and Hobbs stayed for about 20 minutes.
- Fleer and Hobbs left Bradley's house, and Fleer then took Hobbs to eat at Burger King.
- After going to Burger King, Fleer took Hobbs to the H. Roe Bartle Campground, where they arrived between 4:00–7:00 PM on Saturday, October 28, 1989.

As to whether the injury took place during an authorized activity, Plaintiff asserted that the "authorized" activity was the camping trip. Defendants admitted that the camping trip was an authorized scouting activity in their response to Plaintiff's statement of uncontested facts.

Plaintiff also argues that a jury could conclude that *traveling* to the H. Roe Bartle Campground is an indispensable and undeniable part of that authorized activity. Fleer was a scout leader duly authorized to act as such. The camping trip *and the transportation of children to the campground* were authorized and encouraged by Defendants Heart of America Council and Boy Scouts of America, says Plaintiff. These authorized activities, says Plaintiff, allow pedophiles legitimate contact with children. And "pedophiles are always trying to get children into situations where there are no other adults present."

Plaintiff focuses on the contention that a jury could easily infer from the facts that because of the authorized camping trip, there was a need to transport scouts to the campsite. Moreover, Plaintiff says, we can assume that the only reason Lance's mother allowed her son to leave home with Fleer was that Fleer was a BSA scout leader who was taking her son on a BSA camping trip. What was authorized was the camping trip; and Plaintiff adds the conclusion that *travel to the campsite* was an indispensable and undeniable part of that activity.

There is no assertion that the national scouting organizations and national leaders had anything to do with planning, organizing or conducting the scouting event in question. It is undisputed that the scouting event in question was under the control of the local troop, which is not a party to this action. Hobbs is not able to show that *these defendants* authorized the campout in question or had anything to do with authorizing or encouraging Fleer to pick up Hobbs to take him to the campout.

Defendants had no supervision over the activity in question, and there is no dispute that Fleer acted in defiance and disobedience of the applicable policies and rules of Defendants. The defendants did not authorize, plan, conduct or supervise either the activity in question, or the transportation to the event. Accordingly, we affirm the trial court's judgment in favor of Defendants as to Count I of the petition.

### Scouting Program as a "Product"

■ As to Counts II and III of the petition, Plaintiff contends that the court erred in finding that the scouting program

was not a "product" under product liability jurisprudence. Plaintiff claims there were material facts from which it could be found that a scouting program was not a service but a product and that Defendants knew the product was defective when "sold" to Plaintiff.

Defendants point out that the Restatement of Torts (Third) defines a product as "tangible personal property distributed commercially for use or consumption." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, § 19(a). Product liability theories do not apply to services. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, § 19(f); see also Hershley v. Brown, 655 S.W.2d 671, 675 (Mo.App.1983) (refusing to apply strict liability to rendition of medical services). Plaintiff presents no authority to the contrary.

Plaintiff presents the fact that one scout leader stated, "I think of scouting as a product...." See Dale v. Boy Scouts of Am., 308 N.J.Super. 516, 706 A.2d 270, 280 (1998), rev'd on other grounds, Boy Scouts of Am. v. Dale, 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). Plaintiff also points out that in Young v. Boy Scouts of America, 9 Cal.App.2d 760, 51 P.2d 191, 194 (1935), the court stated, "Strictly speaking, the boy scouts' organization does not ... carry on a service in the sense in which a hospital ... does." These statements fall short of a judicial adjudication that scouting is a product within the meaning of the product liability laws.

For all the foregoing reasons, we conclude that there are no material facts in dispute and that Defendants were entitled to judgment as a matter of law.

BRECKENRIDGE and HOWARD, JJ., concur.