

# In the Missouri Court of Appeals
# Eastern District

## <u>DIVISION FOUR</u>

| | | |
|---|---|---|
| ROCHELLE AMEER, | ) | No. ED112455 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| LYFT, INC., | ) | 2222-CC00417 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | Honorable Joseph P. Whyte |
| CHRISTOPHER D. MORGAN, and | ) | |
| AJANE BARNES, | ) | |
| | ) | |
| Defendants. | ) | Filed:  March 4, 2025 |

Rochelle Ameer ("Plaintiff") appeals the judgment dismissing her product liability and

negligence claims against Lyft, Inc. ("Defendant Lyft" or "Lyft") for failure to state a claim upon

which relief can be granted.[1]  Taking as true the allegations in Plaintiff's petition[2] and viewing

---

[1] Plaintiff filed product liability claims and negligence claims against Defendant Lyft (Counts I-V).  Additionally, Plaintiff filed assault and battery claims against underlying defendant Christopher D. Morgan ("Morgan") (Counts VI-VII), and a civil conspiracy claim against Morgan and underlying defendant Ajane Barnes (Count VIII).  The trial court subsequently entered a judgment dismissing Counts I-V against Defendant Lyft, certifying the judgment for appeal as to all claims against Lyft pursuant to Missouri Supreme Court Rule 74.01(b) (2024), and finding there was no just reason for delay of an appeal.
[2] All references to Plaintiff's petition are to her first amended petition.

all reasonable inferences therefrom in her favor,[3] Plaintiff's claims against Defendant Lyft arose out of a September 2020 incident where her son was driving for Lyft and was killed during a carjacking after he responded to a ride fraudulently and anonymously requested through Lyft's mobile ridesharing application ("Lyft App" or "App").

Plaintiff's petition asserts three product liability claims against Defendant Lyft for strict liability defective design (Count I), negligent design (Count II), and negligent failure to warn (Count III). Plaintiff's petition also asserts two negligence claims against Lyft for negligent training (Count IV) and general negligence (Count V).

For the reasons discussed in detail below, we reverse the trial court's judgment dismissing Plaintiff's product liability claims in Counts I-III and Plaintiff's negligence claims in Counts IV-V for failure to state a claim upon which relief can be granted, and we remand for further proceedings consistent with this opinion.

## I.    BACKGROUND

Because this appeal involves a dismissal by the trial court for failure to state a claim upon which relief may be granted, we begin by setting out the general allegations of Plaintiff's petition.

Plaintiff is the natural mother of Andrew D. Ameer ("Son"). Plaintiff's Son was killed during a carjacking while he was driving for Defendant Lyft in the City of St. Louis.

Defendant Lyft is a Delaware corporation with its principal place of business in California. Since 2012, Lyft has operated a transportation service to the public for profit by: (1) developing the Lyft App, which the petition refers to as a "mobile application" or "ridesharing

---

[3] *See Amalaco, LLC v. Butero*, 593 S.W.3d 647, 650-51 (Mo. App. E.D. 2019) (in reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume all of the plaintiff's allegations in the petition are true and view all reasonable inferences therefrom in favor of the plaintiff).

platform[;]" and (2) placing the App into the stream of commerce. The Lyft App permits Lyft's drivers to connect with unknown individuals who are requesting automobile rides, and Lyft requires its drivers to accept all ride requests when logged into its App or be subject to potential discipline. Additionally, an individual requesting a ride through the Lyft App is provided, via the App, information about the driver, including his or her vehicle type. Lyft operates its App in every state in the United States, including Missouri.

Plaintiff's petition alleges that on the evening of September 28, 2020, underlying defendants Christopher D. Morgan ("Morgan") and Ajane Barnes ("Barnes"), who were at the time minors and supposed to be ineligible to order rides through the Lyft App, met and conspired together to use the App to carjack a Lyft driver. In order to hide their identity, Morgan and Barnes purportedly set up an account in the Lyft App utilizing a false name, a false email address, and an anonymous form of payment. Morgan and Barnes then used their account in the App to fraudulently and anonymously request a ride from a neighborhood in the City of St. Louis to a destination miles away.

The Lyft App then directed the ride request to Plaintiff's Son, who accepted the request and arrived at the pick-up location at approximately 11:00 p.m. Moments later, Morgan and another minor, V.W., announced a robbery and pulled guns on Son, attempting to force him to get out of his car. Morgan subsequently shot and killed Son.

Plaintiff then filed the petition at issue in the instant case, alleging, *inter alia*, three product liability claims and two negligence claims against Defendant Lyft. *See* footnote 1 of this opinion. Plaintiff's petition generally alleges that Defendant Lyft "failed to employ basic identity[]verification, age verification, GPS coordinate verification technology, and data pattern analysis to screen out [fraudulent passengers such as Plaintiff's Son's perpetrators]," and thereby

3

allowed Son's perpetrators to request a ride "even though [a] Lyft account was not in their [real] names, [the ride] had not been ordered from their location, and [they were] using an unverified form of payment."

The petition also generally alleges that the assault and killing of Plaintiff's Son were foreseeable to Defendant Lyft and were the result of Lyft's "failure to use its knowledge, superior resources, and technological capabilities to protect [Son]" because: (1) the carjacking scheme perpetrated upon Son was previously carried out multiple times by his perpetrators; and (2) Lyft knew or should have known that multiple rideshare drivers had been assaulted, attacked, and carjacked as a result of the same fraudulent scheme.

Counts I-III of Plaintiff's petition specifically assert three product liability claims against Defendant Lyft (for strict liability defective design, negligent design, and negligent failure to warn, respectively) based on alleged defects in the Lyft App. Counts IV-V of the petition assert two negligence claims against Defendant Lyft (for negligent training and general negligence, respectively) based on: (1) Lyft's alleged failure to exercise reasonable care to train Plaintiff's Son to adequately perform his job as a Lyft driver with reasonable safety; and (2) Lyft's alleged failure to exercise reasonable care to prevent Plaintiff's Son from being assaulted, killed, or otherwise harmed by Lyft App users.[4]

After Plaintiff filed her petition, Defendant Lyft filed a motion to dismiss Counts I-V for failure to state a claim upon which relief may be granted. Lyft's motion asserts Plaintiff's product liability claims in Counts I-III, which are all based on alleged defects in the Lyft App, should be dismissed because the factual allegations in Plaintiff's petition fail to establish the Lyft App is a product, which is a prerequisite for any product liability claim. *See* Sections II.B.2.a.-c.

---

[4] To avoid unnecessary repetition, additional allegations in Plaintiff's petition with respect to Counts I-V will be set forth in relevant part in Sections II.B. and II.C. of this opinion.

4

of this opinion.  Lyft's motion also claims Plaintiff's negligence claims in Counts IV-V should be dismissed because the factual allegations in Plaintiff's petition fail to establish the element of duty.

The trial court entered a judgment granting Defendant Lyft's motion and dismissing Counts I-V of Plaintiff's petition, specifically finding that Lyft's arguments in its motion to dismiss had merit.  This appeal followed.

## II.     DISCUSSION

Plaintiff raises two points on appeal respectively alleging that: (1) the trial court erred in dismissing her product liability claims in Counts I-III; and (2) the trial court erred in dismissing her negligence claims in Counts IV-V.

### A.     General Standard of Review Applying to the Trial Court's Dismissal of All Counts

This Court reviews *de novo* the trial court's grant of a motion to dismiss.  *Amalaco, LLC v. Butero*, 593 S.W.3d 647, 650 (Mo. App. E.D. 2019).  We review a motion to dismiss for failure to state a claim upon which relief may be granted solely to determine the adequacy of the plaintiff's petition.  *Id*. at 650-51.

We assume all of the plaintiff's allegations in the petition are true and view all reasonable inferences therefrom in favor of the plaintiff.  *Id*. at 651.  Therefore, if the petition alleges any set of facts that, if true, meet the elements of any recognizable cause of action, the petition is adequate and states a claim.[5]  *See id*. at 650-51; *Vaughn v. Genasci*, 323 S.W.3d 454, 456 (Mo.

---

[5] "While we assume all of the allegations in the [Plaintiff's] petition are true at this stage in the proceedings, [*see Amalaco*, 593 S.W.3d at 651], nothing in this opinion should be construed as a finding of fact that would govern any further proceedings relating to this case.  Moreover, we note there may be facts developed and considered on a motion for summary judgment or at trial that foreclose [Plaintiff] relief on some or all of [her] counts [against Lyft]."  *See CIBC Bank USA v. Williams*, 669 S.W.3d 298, 303 n.4 (Mo. App. E.D. 2023).

App. E.D. 2010).  However, we disregard conclusory allegations that are not supported by the facts.  *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 90 (Mo. App. E.D. 2012).

**B.      The Trial Court's Dismissal of Plaintiff's Product Liability Claims in Counts I-III**

In Plaintiff's first point on appeal, she argues the trial court erred in dismissing her product liability claims in Counts I-III (for strict liability defective design, negligent design, and negligent failure to warn, respectively), which are all based on alleged defects in the Lyft App. The trial court dismissed Counts I-III for failure to state a claim on the grounds that the factual allegations in Plaintiff's petition fail to establish the Lyft App is a product, which is a prerequisite for any product liability claim.  *See* Sections II.B.2.a.-c. of this opinion.  For the reasons discussed below, we find the trial court's dismissal of Counts I-III is erroneous.

**1.      General Law Regarding Product Liability Claims**

In Missouri, a plaintiff may bring a product liability claim under a theory of strict liability (by asserting claims for defective manufacture, defective design, or failure to warn) or a theory of negligence (by asserting claims for negligent manufacture, negligent design, or negligent failure to warn).  *See Johnson v. Auto Handling Corporation*, 523 S.W.3d 452, 462 (Mo. banc 2017) (*modified*, August 22, 2017).  The difference between the two legal theories is that while a defendant may be found liable under a theory of strict liability without regard to his knowledge and conduct, a defendant's knowledge, conduct, fault, and the standard of care are relevant considerations in determining his liability under a negligence theory.  *Sapp v. Morrison Brothers Co.*, 295 S.W.3d 470, 484 (Mo. App. W.D. 2009) (*modified*, June 23, 2009).  Nevertheless, "[s]trict liability and negligence . . . theories [] may rely on the same operative facts to support recovery."  *Dorman v. Bridgestone/Firestone, Inc.*, 992 S.W.2d 231, 239 (Mo. App. E.D. 1999); *see also Johnson*, 523 S.W.3d at 466.

6

**2.** **Plaintiff's Product Liability Claims Against Defendant Lyft Based on Purported Defects in the Lyft App**

In this case, Plaintiff filed three product liability claims against Defendant Lyft for strict liability defective design (Count I), negligent design (Count II), and negligent failure to warn (Count III). All of these counts are based on the same operative factual allegations – purported defects in the Lyft App relating to the App's alleged failure to contain protections for Lyft's drivers (including Plaintiff's Son).[6] *See id*.

**a.** **The Elements of a Strict Liability Defective Design Claim (Plaintiff's Count I)**

For a strict liability defective design claim, a plaintiff must allege: "(1) the defendant sold a *product* in the course of its business; (2) the *product* was then in a defective condition [and was] unreasonably dangerous when put to a reasonably anticipated use; (3) the *product* was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the *product* was sold." *Poage v. Crane Co.*, 523 S.W.3d 496, 508 (Mo. App. E.D. 2017) (citation omitted and emphasis added); *see also Johnson*, 523 S.W.3d at 462, 466 (holding these elements are set forth in MAI-Civil 25.04 8th ed. (1978 revision),[7] which is the applicable MAI for strict liability defective design claims); MAI-Civil 25.04; 34B MOPRAC section 38:2.a. (August 2024 update).[8] Accordingly, proof of a defect in a *product* is an essential element of a plaintiff's claim for strict liability defective design. *Id*.; 34B MOPRAC section 38:10.a.

---

[6] To avoid unnecessary repetition, the specific factual allegations in Counts I-III relating to alleged defects in the Lyft App will be set out below in relevant part in Section II.B.3.b. of this opinion.

[7] All references to MAI-Civil 25.04 are to the 8th ed. (1978 revision).

[8] All further references to sections in 34B MOPRAC are to the August 2024 update.

7

**b.**     **The Elements of Negligent Design and Negligent Failure to Warn Claims (Plaintiff's Counts II and III)**

The elements of negligent design and negligent failure to warn claims are set out in MAI-Civil 25.09 8th ed.[9] *Johnson*, 523 S.W.3d at 457, 462-66; *see also* MAI-Civil 25.09.  For a negligent design claim, a plaintiff must allege: (1) the defendant designed a *product*; (2) the *product* was defective or hazardous; (3) the defendant failed to use ordinary care to design the *product* to be reasonably safe; and (4) as a direct result of such failure, the plaintiff sustained damage.  MAI-Civil 25.09; *see also* Note on Use No. 2 to MAI-Civil 25.09; committee comment A to MAI-Civil 25.09; *Johnson*, 523 S.W.3d at 457, 462-66.  Similarly, for a negligent failure to warn claim, a plaintiff must allege: (1) a defendant manufactured or designed a *product*; (2) the *product* was defective or hazardous; (3) the defendant failed to use ordinary care to adequately warn of the risk of harm from the alleged defect or hazard in the *product*; and (4) as a result of such failure, the plaintiff sustained damage.  *Id.*  In sum, and as relevant to this case, proof of a defect or hazard in a *product* is an essential element of a plaintiff's claims for negligent design and negligent failure to warn.  *Id.*

**c.**     **The Common Element of All of Plaintiff's Product Liability Claims Against Lyft: The Allegedly Defective Lyft App Must be a Product**

Based on the foregoing, in order for Plaintiff to sufficiently allege product liability claims for strict liability defective design, negligent design, and negligent failure to warn against Defendant Lyft in Counts I-III of her petition, her factual allegations must aver, *inter alia*, that the allegedly defective Lyft App was a product.  *See id.*; *Poage*, 523 S.W.3d at 508; MAI-Civil 25.04; 34B MOPRAC sections 38:2.a. and 38:10.a.  Whether a mobile ridesharing application such as the Lyft App may be considered a product for purposes of a recognizable product

_____

[9] All references to the language in MAI-Civil 25.09 or its Notes on Use are to the 8th ed. (1990 "new" version), and all references to the committee comments to MAI-Civil 25.09 are to the 8th ed. (2021 revision).

liability claim is an issue of first impression for Missouri Courts. *See Amalaco*, 593 S.W.3d at 650-51 and *Vaughn*, 323 S.W.3d at 456 (collectively holding that in order for a petition to state a claim, the petition must allege facts that, if true, meet the elements of any recognizable cause of action).

> **3.** **The History of Product Liability Law in Missouri and This Court's Determination of Whether a Mobile Ridesharing Application Such as the Lyft App May Be Considered a Product for Purposes of a Recognizable Product Liability Claim**

Prior to the instant case, Missouri Courts have applied product liability law to harm caused by tangible items including a chain and ratchet system, cigarettes, a driver's seat in a car, and plane parts. *See, e.g., Johnson*, 523 S.W.3d at 457-69 (chain and ratchet system); *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 628-44 (Mo. banc 2013) (cigarettes); *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 754-69 (Mo. banc 2011) (driver's seat in a car); *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 372-88 (Mo. banc 1986) (airplane parts).[10] Additionally, Missouri Courts have held product liability law does not apply to harm caused by a scouting program, the supply of electricity, medical services, and services in general, finding those items are not considered a product for purposes of a product liability claim. *Hobbs v. Boy Scouts of America, Inc.*, 152 S.W.3d 367, 371-72 (Mo. App. W.D. 2004) (scouting program and services in general); *Balke v. Central Missouri Elec. Cooperative*, 966 S.W.2d 15, 21-25 (Mo. App. W.D. 1997) (*opinion readopted after retransfer*, June 2, 1998) (supply of electricity); *Hershley v. Brown*, 655 S.W.2d 671, 674-75 (Mo. App. W.D. 1983) (medical services).

---

[10] *See also Poage*, 523 S.W.3d at 506-30 (gaskets and packing); *Feiteira v. Clark Equipment Co.*, 236 S.W.3d 54, 57-65 (Mo. App. E.D. 2007) (steer-skid loader); *Sanders v. Wallace*, 817 S.W.2d 511, 513-18 (Mo. App. E.D. 1991) (tractor); *Wild v. Consolidated Aluminum Corp.*, 752 S.W.2d 335, 336-40 (Mo. App. E.D. 1988) (ladder); *Klein v. General Elec. Co.*, 714 S.W.2d 896, 899-907 (Mo. App. E.D. 1986) (coffeemaker).

None of these previously-mentioned cases are on point here, because a mobile ridesharing application, like the Lyft App in this case, is not directly comparable to a tangible item, a scouting program, the supply of electricity, or a service (medical or otherwise). *See Doe v. Lyft, Inc.*, Case No. 23-2548-JWB-TJJ, 2024 WL 4651015, at *2-3 (D. Kansas November 1, 2024) (similarly holding the Lyft app is not directly comparable to a tangible product or a service). As alleged in Plaintiff's petition: (1) "[t]he [] Lyft [App] was designed, created, assembled, inspected, marketed, sold, and otherwise delivered into the stream of commerce by Lyft[] in the regular course of its business"; (2) the Lyft App is a mobile ridesharing application that "is available to the general public . . . for anyone to download with a smartphone"; (3) individuals can request a ride from a Lyft driver after opening a Lyft account on the Lyft App and submitting a form of payment; (4) the Lyft App "provides a [] service . . . in providing transportation to members of the public" by connecting individuals purporting to seek rides with Lyft drivers; and (5) the September 2020 incident during which Plaintiff's Son was killed took place after Son and his perpetrators were connected through the Lyft App and after the perpetrators took advantage of alleged defects in the App's design to fraudulently and anonymously request a ride.

Based on the above allegations in Plaintiff's petition, we find the petition avers the Lyft App has characteristics of both a service and a tangible product. *See id.* (similarly holding). On the one hand, the App provides and sells a transportation service which connects purported riders and Lyft drivers. *See id.* at *3 (citing *Crouch v. Ruby Corp.*, 639 F.Supp.3d 1065, 1081 (S.D. Cal. 2022)). On the other hand, Lyft's role is different from a mere service provider because Lyft designed and placed the Lyft App into the stream of commerce for the general public, putting Lyft in the best position to control the risk of harm associated with the App caused by the

design choices, similar to designers of defective tangible products. *See Doe*, 2024 WL 4651015, at *2-3 (citing *T.V. v. Grindr, LLC*, No. 3:22-CV-864-MMH-PDB, 2024 WL 4128796, at *26 (M.D. Fla. August 13, 2024)) and *Brookes v. Lyft Inc*, No. 50-2019-CA-004782-XXXX-MB, 2022 WL 19799628, at *3 (Fla. 15th Cir. Ct. September 30, 2022) (both similarly holding).

Accordingly, and as aptly stated by a Florida court faced with the same issue before us here, our Court must "recogni[ze] . . . the changes rippling through our society as a result of the technology at issue[,]" and decide whether the Lyft App "should be f[orced] into . . . the old square hole[s] . . . of [pre-]existing legal categories, when [none are] a perfect fit." *See Brookes*, 2022 WL 19799628, at *1-5 (internal quotations omitted) (quoting *McGillis v. Department of Economic Opportunity*, 210 So.3d 220, 223 (Fla. App. 3rd Dist. 2017)); *see also Doe*, 2024 WL 4651015, at *2-3 (similarly finding).

This Court finds it is not appropriate to force the Lyft App into one of the pre-existing legal categories in Missouri product liability law referred to above (a tangible item, a scouting program, the supply of electricity, a medical service, or a service in general) because Plaintiff's petition avers the Lyft App is multi-faceted and involves readily-available new technology. *See Brookes*, 2022 WL 19799628, at *1 (similarly referring to the Lyft app as "a multi-faceted product of new technology") (quoting *McGillis*, 210 So.3d at 223); Section II.B.3. of this opinion. Instead, in determining whether the Lyft App may be considered a product for purposes of a recognizable product liability claim in Missouri, we find precedent from the U.S. District Court of Kansas in *Doe v. Lyft*, 2024 WL 4651015, to be instructive.

**a.** *Doe v. Lyft*, **2024 WL 4651015 (D. Kansas November 1, 2024)**

In *Doe v. Lyft*, the plaintiff filed, *inter alia*, a product liability claim against Lyft alleging she was sexually assaulted by a Lyft driver after the plaintiff used the Lyft app to request a ride. *Id*. at *1. The plaintiff alleged the Lyft driver had a criminal record and did not possess a valid driver's license. *Id*. The plaintiff also alleged that when the driver filled out a job application on the Lyft app she submitted: (1) a legitimate picture of the driver; and (2) a driver's license with a picture of someone else because the driver had fraudulently used another person's driver's license for her application. *Id*. at *1, 4. Lyft moved to dismiss the plaintiff's product liability claim on the grounds the Lyft app was not a product and therefore product liability law did not apply. *Id*. at *1-2.

The *Doe* court denied Lyft's motion to dismiss, finding the Lyft app was a product subject to Kansas product liability law because the facts alleged "establish[ed] that the Lyft app [wa]s a software or algorithmic product with sufficient similarities to a tangible product." *Id*. at *2-4. Importantly, the court found that not every injury alleged by the plaintiff was automatically traceable to Lyft via the app under a theory of product liability. *Id*. at *3. Accordingly, the *Doe* court specifically found that in order to survive a motion to dismiss a product liability claim, the plaintiff must allege her injury resulted from a defect in the Lyft app itself, whether in the design or in the functionality of the app, rather than from problems with the application's services or some other aspect of Lyft's business model. *Id*. at *3-4 (citing *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, MDL No. 3084 CRB, 2024 WL 4211217, at *24 (N.D. Cal. August 15, 2024)). Furthermore, the court found the plaintiff met the aforementioned standard because the plaintiff alleged the design of the Lyft app itself was defective in that the app did not properly distinguish between the legitimate picture of the driver

12

submitted with her job application and the picture of the individual on the driver's license the driver fraudulently submitted with her application. *Doe*, 2024 WL 4651015, at *1, 3-4.

> ### b. This Court's Holdings and Their Application to the Factual Allegations in this Case

We agree with the reasoning in *Doe v. Lyft* and similarly hold: (1) a mobile ridesharing application such as the Lyft App is a product subject to product liability law if the facts alleged establish that the application has sufficient similarities to a tangible product; and (2) in order to survive a motion to dismiss a product liability claim in a wrongful death case like the one here, the plaintiff must allege the decedent's death resulted from a defect in the application itself, whether in the design or in the functionality of the app, rather than from problems with the application developer's services or some other aspect of its business model. *See id.* at *3-4 (citing *In re Uber Technologies*, 2024 WL 4211217, at *24); *see also* section 19(a) of the Restatement (Third) of Torts: Product Liability (1998)[11] (defining a product as, *inter alia*, an item that in "the context of [its] distribution and use is sufficiently analogous to the distribution and use of tangible personal property"); *Hobbs*, 152 S.W.3d at 371-72 (citing approvingly to portions of section 19 of the Third Restatement in determining whether a scouting program was a product under Missouri product liability law).

In this case, we find Plaintiff's petition sufficiently meets both parts of the test for determining whether a mobile ridesharing application is a product for purposes of surviving a motion to dismiss. First, the facts alleged in Plaintiff's petition establish that the Lyft App has sufficient similarities to a tangible product. As previously stated, Plaintiff alleges Lyft designed and placed the Lyft App into the stream of commerce for the general public, which put Lyft in

---

[11] All further references to the Restatement (Third) of Torts are to the 1998 version. For ease of reading, we will subsequently refer to this authority as "the Third Restatement."

the best position to control the risk of harm associated with the App caused by the design choices, similar to designers of defective tangible products. *See Doe*, 2024 WL 4651015, at *2-3 (citing *Grindr*, 2024 WL 4128796, at *26) and *Brookes*, 2022 WL 19799628, at *3 (both similarly holding); *see also Hendricks v. Missouri-Kansas-Texas R. Co.*, 709 S.W.2d 483, 496-97 (Mo. App. S.D. 1986) (indicating an item is a product for purposes of a product liability claim when, as in this case, the item is placed into the stream of commerce).

Additionally, Plaintiff's petition alleges: (1) the Lyft App was developed and placed into the stream of commerce so Lyft could operate a transportation service to the public for profit; (2) to receive and accept rides from purported passengers, Lyft drivers must download the App to a smartphone and then use the App; and (3) to request a ride from a Lyft driver, purported passengers must download the App to a smartphone and then use the App to create a Lyft account and submit a form of payment. Taking these allegations as true, and viewing all reasonable inferences therefrom in favor of Plaintiff, Lyft profits from the Lyft App and creates demand and reliance on the App for Lyft drivers and customers, putting Lyft in a position similar to the designers of tangible products. *See id*. ("the product need not be actually sold if it has been injected in the stream of commerce by other means . . . [and] . . . it is the defendant's participatory connection, for his personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product which calls for the imposition of strict liability") (citation and internal quotations omitted); *see also Amalaco*, 593 S.W.3d at 651.

Under the above circumstances, we find the facts alleged in Plaintiff's petition establish that the Lyft App has sufficient similarities to a tangible product.

In addition, the second part of the test for determining whether a mobile ridesharing application is a product for purposes of surviving a motion to dismiss has been met because Plaintiff's petition sufficiently alleges her Son's death resulted from a defect in the design of the Lyft App itself, rather than from problems with Lyft's services or some other aspect of its business model. Specifically, Plaintiff's claim for strict liability defective design in Count I alleges the Lyft App was in a defective condition and was unreasonably dangerous when it was used by Plaintiff's Son on the night of the September 2020 incident because it purportedly failed to contain multiple protections for its drivers including: adequate data verification technology pertaining to a passenger's age, identity, or violent propensity; adequate GPS coordinate verification technology; and adequate data pattern analysis technology to identify potentially fraudulent or violent riders. Additionally, Plaintiff's negligent design claim in Count II avers Defendant Lyft failed to exercise reasonable care in the creation, design, and deployment of the Lyft App because the App allegedly failed to contain multiple protections for drivers, including those alleged in Count I. Similarly, Plaintiff's negligent failure to warn claim in Count III alleges Defendant Lyft failed to exercise reasonable care to warn its drivers, including Plaintiff's Son, of the purported defects and dangers in the Lyft App, including those alleged in Counts I and II.

Finally, and perhaps most importantly, Counts I-III all allege the September 2020 incident during which Plaintiff's Son was killed took place after Son's perpetrators took advantage of the above alleged defects in the App's design to fraudulently and anonymously request a ride. Plaintiff avers Lyft implemented measures in states other than Missouri requiring purported passengers using the Lyft App with an anonymous form of payment "to provide a driver's license, state ID, or another type of document that shows their name or mailing address,"

15

allowing Lyft to discover that a "fictitious person who set up the Lyft account d[oes] not exist[] and that the form of payment [i]s unverified"). Notably, to allow Lyft to be foreclosed from liability in Missouri for omissions in the design of the Lyft App which were allegedly implemented in other states would incentivize Lyft and other mobile application developers to: (1) not put protections in place for Lyft drivers and customers in Missouri; and (2) eliminate protections for its users in other states.

Based on these allegations, we hold Plaintiff's petition sufficiently alleges her Son's death resulted from a defect in the design of the Lyft App itself.

**4.      Conclusion as to Plaintiff's First Point on Appeal**

Under the above circumstances, we hold Plaintiff's petition adequately alleges that: (1) the Lyft App is a product for purposes of a recognizable product liability claim in Missouri;[12] and (2) Plaintiff's Son's death resulted from a defect in the design of the App itself. Accordingly, the trial court erred in finding the factual allegations in Plaintiff's petition fail to establish the Lyft App is a product and in dismissing Plaintiff's product liability claims in Counts I-III (for strict liability defective design, negligent design, and negligent failure to warn, respectively) on this basis. Point one is granted.

---

[12] Courts in other jurisdictions are split on whether mobile rideshare applications that match riders with drivers are a product for purposes of a plaintiff's product liability claim under state law. *Doe*, 2024 WL 4651015, at *2. Cases with a result consistent with our holding that the Lyft App is a product for purposes of Plaintiff's product liability claims in this case include: (1) *Doe v. Lyft*, 2024 WL 4651015, at *1-4 (holding the Lyft app is a product for purposes of a plaintiff's product liability claim under Kansas law); (2) *In re Uber Technologies*, 2024 WL 4211217, at *21-24 (holding the Uber application is a product for purposes of plaintiffs' product liability claims under California and Texas law); and (3) *Brookes v. Lyft*, 2022 WL 19799628, at *1-5 (finding the Lyft app is a product for purposes of a plaintiff's product liability claims under Florida law). Cases with a result different than our holding include: (1) *Thiam v. Lyft, Inc.*, Case No. 2022 L 003052 (Ill. Cir. Ct. December 20, 2022) (finding the Lyft app is not a product for purposes of a plaintiff's product liability claims under Illinois law); (2) *Baxter-Armentrout v. Roberts, et al.*, Case. No. 50-2021-CA-013917-XXXX-MB (Fla. 15th Cir. Ct. August 29, 2022) (finding the Lyft app is not a product for purposes of a plaintiff's product liability claims under Florida law); and (3) *Behuet v. Uber*, No. 21STCV26056, 2022 WL 20318684, at *1-2 (Cal. Super. Ct. July 13, 2022) (finding the Uber application is not a product for purposes of plaintiffs' product liability claim under California law).

**C.**      **The Trial Court's Dismissal of Plaintiff's Negligence Claims in Counts IV-V**

In Plaintiff's second and final point on appeal, she argues the trial court erred in dismissing her negligence claims in Counts IV-V (for negligent training and general negligence, respectively). Count IV was based on Lyft's alleged failure to exercise reasonable care to train Plaintiff's Son to adequately perform his job as a Lyft driver with reasonable safety. Count V was based on Lyft's alleged failure to exercise reasonable care to prevent Plaintiff's Son from being assaulted, killed, or otherwise harmed by Lyft App users. The trial court dismissed Counts IV-V for failure to state a claim on the grounds that the factual allegations in Plaintiff's petition fail to establish the element of duty. For the reasons discussed below, we find the trial court's decision in this regard is erroneous.

     **1.**      **The Elements of Plaintiff's Negligence Claims in this Case and General Law Regarding the Element of Duty**

The claims at issue in this case – negligent training and general negligence – are based on a theory of wrongful death. In any negligence action based on such a theory, the plaintiff must adequately plead and establish the following general elements: "(1) the defendant owed the decedent a duty of care; (2) the defendant breached that duty; (3) the breach was the cause in fact and proximate cause of the decedent's death; and (4) as a result of the breach, the plaintiff suffered damages." *Scales v. Whitaker*, 615 S.W.3d 425, 429 (Mo. App. E.D. 2020). Accordingly, a plaintiff must allege each of those general elements in order to state a claim for negligent training or general negligence based on a theory of wrongful death. *See id.*; *Amalaco*, 593 S.W.3d at 650-51; *Vaughn*, 323 S.W.3d at 456; *see also* 37 MOPRAC section 17:15 (November 2024 update) (setting forth the elements of a negligent training claim, including a defendant-company's duty to exercise reasonable care in training its worker); *Frye v. Monarch*

*Title of Northern Missouri*, 565 S.W.3d 693, 698-99 (Mo. App. W.D. 2018) (setting forth the elements of a general negligence claim).

At issue here is whether Plaintiff's petition adequately alleges the element of duty. "Whether a duty exists is purely a question of law . . . [and] is determined on a case-by-case basis." *Sun Aviation, Inc. v. L-3 Communications Avionics Systems, Inc.*, 533 S.W.3d 720, 727 (Mo. banc 2017) (internal citation and quotations omitted); *see also Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985) ("[t]he duty to exercise care may be a duty imposed by common law under the circumstances of a given case") (citation omitted).

"This Court's determination of whether a [common law] duty exists in a particular case depends on several public policy considerations including the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it[,] and the consequences of placing that burden on defendant." *Scales*, 615 S.W.3d at 436 (citation and internal quotations omitted). "Where, as in this case, there is the absence of a particular relationship recognized by law to create a duty,[13] 'the concept of foreseeability is paramount in determining whether a duty exists.'" *Scales*, 615 S.W.3d at 436 (quoting *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo. banc 2000)). "Foreseeability is defined 'as the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it.'" *Scales*, 615 S.W.3d at 436 (citations omitted). "A mere probability [of harm] is insufficient; rather, there must be the existence of a probability which would cause a reasonable person to take precautions to avoid it." *Id*. Furthermore, when

---

[13] On appeal, Plaintiff does not argue Defendant Lyft and Plaintiff's Son had a particular relationship recognized by common law that created a duty on the part of Lyft under the circumstances of this case, and we can find no case law supporting such an argument. *See Scales*, 615 S.W.3d at 436 n.5.

deciding if harm was foreseeable to a defendant, courts examine what he knew or should have known. *Hoover's Dairy*, 700 S.W.2d at 431.

> **2. Relevant Missouri Case Law Regarding a Defendant's Duty to Protect Against the Criminal Acts of Third Parties Under Circumstances Where, Like Here, a Victim is Injured at a Location Other than the Defendant's Premises**

"A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Wieland v. Owner-Operator Services, Inc.*, 540 S.W.3d 845, 848 (Mo. banc 2018) (citation omitted). However, Missouri Courts recognize limited exceptions to this general rule and find a duty to protect against the criminal acts of third parties may exist "when special facts and circumstances render injury foreseeable in a given case." *See Harner v. Mercy Hospital Joplin*, 679 S.W.3d 480, 484 (Mo. banc 2023).

As relevant here, Missouri Courts rely on principles in section 302B of the Restatement (Second) of Torts (1965)[14] and the comments thereto and recognize at least two exceptions when special facts and circumstances may render injuries foreseeable, thereby creating a duty to protect against the criminal acts of third parties. *Advance Rental Centers, Inc. v. Brown*, 729 S.W.2d 644, 645-46 (Mo. App. S.D. 1987); *Irby v. St. Louis County Cab Co.*, 560 S.W.2d 392, 395 (Mo. App. 1977); *see also Harner*, 679 S.W.3d at 484; *Rardon v. Falcon Safety Products, Inc.*, No. 20-6165-CV-SJ-BP, 2021 WL 2008923, at *3-5 (W.D. Mo. May 4, 2021).

A defendant may be charged with a duty of care to take precautions to protect others from the criminal acts of third parties when the facts and circumstances show: (1) the defendant "should realize through special facts within his knowledge . . . that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another" (individually "first

---

[14] All further references to the Restatement (Second) of Torts are to the 1965 version. For ease of reading, we will subsequently refer to this authority as "the Second Restatement."

exception"); or (2) the defendant "has brought the victim into contact or association with a person or persons whom he knows or should know to be particularly liable to commit criminal acts, and under circumstances which afford a peculiar opportunity or temptation for such misconduct" (individually "second exception") (collectively "two exceptions"). *Brown*, 729 S.W.2d at 645-46; *Irby*, 560 S.W.2d at 395; *see also* section 302B of the Second Restatement; section D. to comment e. of section 302B of the Second Restatement. Importantly, we hold these two exceptions to the general rule that a defendant does not have a duty to protect against the criminal acts of third parties apply to circumstances where, like here, a victim is injured at a location other than the defendant's premises.[15] *See Irby*, 560 S.W.2d at 393-95; *see also Rardon*, 2021 WL 2008923, at *3 (contrasting section 302B of the Second Restatement with the "landowner-specific section 344 [of the Second Restatement]").

### 3. Analysis as to Whether Plaintiff's Petition Adequately Alleges Defendant Lyft Had a Duty to Protect Plaintiff's Son from the Criminal Acts of Third Parties

For the reasons discussed below, we hold Plaintiff's petition sufficiently alleges Lyft had a duty of care, pursuant to the two exceptions set out above, to protect Plaintiff's Son from being harmed by his perpetrators under the circumstances of this case.

### a. Plaintiff's Allegations and this Court's Analysis Relevant to the First Exception

In this case, Plaintiff's petition avers Son's perpetrators: conspired together to use the Lyft App to carjack a Lyft Driver; used the App to fraudulently and anonymously request a ride

---

[15] For a discussion of the exceptions to the general rule that a defendant does not have a duty to protect against the criminal acts of third parties that may apply to circumstances where a victim-invitee is injured on the defendant's premises, *see Wieland*, 540 S.W.3d at 848-49 (applying principles in, *inter alia*, section 344 of the Second Restatement and the comments thereto). *See also* section 537.787.1-.2 RSMo Cum. Supp. 2018 (effective from August 28, 2018, to the present) (discussing the extent of a defendant-business's duty "to guard against criminal acts or harmful acts on the premises" and "the [] affirmative defenses [that] shall apply in any civil action for damages against a [defendant-]business for injuries sustained by a person in connection with criminal acts or harmful acts committed by another person on the premises").

20

by utilizing a false name, a false email address, and an anonymous form of payment; and then assaulted and murdered Son. Plaintiff further alleges: (1) Lyft knew or should have known through its "superior resources[] and technological capabilities" and its "develop[ment] and commercializ[ation] [] of . . . sophisticated data collection and analysis" that multiple rideshare drivers had been assaulted, attacked, and carjacked as a result of the same fraudulent scheme perpetrated upon Plaintiff's Son; and (2) therefore, Lyft knew or should have known Plaintiff's Son was "at [a] high risk of assault and carjackings by [purported] passengers," like Son's perpetrators, who fraudulently and anonymously requested rides through the Lyft App.

Additionally, Plaintiff's petition avers Lyft failed to utilize readily available and known measures that would have protected Plaintiff's Son from harm while driving for Lyft in Missouri. These alleged omissions on the part of Lyft include: (1) failing to train Plaintiff's Son to identify particularly dangerous situations or people; (2) failing to offer Plaintiff's Son security measures in his vehicle such as a surveillance camera or a physical barrier between the front and backseats; and (3) failing to implement basic anti-fraud and identity-verification measures in its App that Lyft had implemented in other states. As to (3), Plaintiff's petition specifically avers Lyft implemented measures in its App in other states requiring purported passengers using a Lyft account with an anonymous form of payment "to provide a driver's license, state ID, or another type of document that shows their name or mailing address," allowing Lyft to discover that a "fictitious person who set up the Lyft account d[oes] not exist[] and that the form of payment [i]s unverified").

Viewing the above allegations collectively, taking them as true, and viewing all reasonable inferences therefrom in favor of Plaintiff, we hold Plaintiff's petition sufficiently alleges Lyft should have realized through special facts within its knowledge that its omissions

21

exposed Plaintiff's Son to an unreasonable risk of harm through the conduct of third parties, like Son's perpetrators, who were able to use the Lyft App to fraudulently and anonymously request a ride. *See Amalaco*, 593 S.W.3d at 651. In other words, Plaintiff's petition sufficiently alleges Defendant Lyft had a duty to protect Plaintiff's Son from harm under the first exception and that special facts and circumstances rendered Plaintiff's Son's injuries foreseeable to Lyft in this case. *See Irby*, 560 S.W.2d at 393-95; section 302B of the Second Restatement; *see also Harner*, 679 S.W.3d at 484.

### b. Plaintiff's Allegations and this Court's Analysis Relevant to the Second Exception

We also find Plaintiff's petition sufficiently alleges Defendant Lyft had a duty to protect Plaintiff's Son from harm under the second exception, i.e., that Lyft brought Plaintiff's Son into contact with persons Lyft knew or should have known to be particularly liable to commit criminal acts, and brought such contact under circumstances which afforded Plaintiff's Son's perpetrators a peculiar opportunity or temptation for such misconduct. *See Brown*, 729 S.W.2d at 645-46; *see also* section D. to comment e. of section 302B of the Second Restatement. Plaintiff's petition avers Lyft's App brought Plaintiff's Son into contact with his perpetrators. Plaintiff's petition also avers Lyft knew or should have known that Plaintiff's Son was "at [a] high risk of assault and carjackings by [purported] passengers," like Son's perpetrators, who fraudulently and anonymously requested rides through the Lyft App by utilizing a false name, a false email address, and an anonymous form of payment.

Additionally, Plaintiff's petition alleges Lyft failed to utilize readily available and known measures that would have protected Plaintiff's Son from harm while driving for Lyft in Missouri. Lyft's alleged omissions in this regard included: (1) Lyft's failure to train Plaintiff's Son to identify particularly dangerous situations or people; (2) Lyft's failure to offer Plaintiff's Son

security measures in his vehicle; and (3) Lyft's failure to implement basic anti-fraud and identity-verification measures in its App in Missouri.

Viewing the above allegations collectively, taking them as true, and viewing all reasonable inferences therefrom in favor of Plaintiff, Plaintiff's petition sufficiently avers: (1) Lyft brought Plaintiff's Son into contact with purported passengers like Son's perpetrators, who Lyft knew or should have known to be particularly liable to commit criminal acts; and (2) Lyft brought such contact under circumstances where Lyft's failures to utilize measures that would have arguably protected Plaintiff's Son from harm afforded Plaintiff's Son's perpetrators a peculiar opportunity or temptation for such misconduct. *See Amalaco*, 593 S.W.3d at 651. In other words, Plaintiff's petition sufficiently alleges Defendant Lyft had a duty to protect Plaintiff's Son from harm under the second exception and that special facts and circumstances rendered Plaintiff's Son's injuries foreseeable to Lyft in this case. *See Brown*, 729 S.W.2d at 645-46; section D. to comment e. of section 302B of the Second Restatement; *see also Harner*, 679 S.W.3d at 484.

### 4.     Conclusion as to Plaintiff's Second Point on Appeal

In sum, under the circumstances of this case, Plaintiff's petition adequately alleges Defendant Lyft had a duty to protect Plaintiff's Son from being harmed by his perpetrators pursuant to the two exceptions to the general rule that a defendant does not have a duty to protect against the criminal acts of third parties. *See Brown*, 729 S.W.2d at 645-46; *Irby*, 560 S.W.2d at 393-95; section 302B of the Second Restatement; section D. to comment e. of section 302B of the Second Restatement.

Most importantly, we find Plaintiff's petition alleges sufficient special facts and circumstances to render the harm to Plaintiff's Son foreseeable to Lyft in that the likelihood of

23

harm to Son was sufficiently serious that a reasonable person in Lyft's position would have taken precautions to avoid it. *See Harner*, 679 S.W.3d at 484; *see also Scales*, 615 S.W.3d at 436 (defining foreseeability in a manner consistent with our finding and providing that "[w]here, as in this case, there is the absence of a particular relationship recognized by law to create a duty, 'the concept of foreseeability is paramount in determining whether a duty exists'") (internal footnote omitted) (quoting *Lopez*, 26 S.W.3d at 156).

We also note that Plaintiff's allegations, taken as true and viewing all reasonable inferences therefrom in favor of Plaintiff, support findings that: (1) Lyft was better equipped than Plaintiff's Son to anticipate and guard against the harm here; and (2) it would not have been overly burdensome on Lyft to use its purported "knowledge, superior resources, and technological capabilities" to implement measures which could have arguably protected Plaintiff's Son from harm under the circumstances of this case. *Cf. Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881, 886-87 (Mo. banc 1983) (finding a petition does not sufficiently allege a defendant had a duty to protect a victim from the criminal acts of third parties where, *unlike here*, the allegations show "the defendant was no better equipped to anticipate and to guard against crime than was the [victim]"); *see Scales*, 615 S.W.3d at 436 (in determining whether a duty exists, two considerations are "the magnitude of the burden of guarding against [injury,] and the consequences of placing that burden on [the] defendant") (citation omitted); *see also Amalaco*, 593 S.W.3d at 651.

Under the above circumstances, we hold Plaintiff's petition adequately alleges Defendant Lyft had a duty to protect Plaintiff's Son from the criminal acts of third parties, like Plaintiff's Son's perpetrators, who used the Lyft App to fraudulently and anonymously request a ride. Therefore, the trial court erred in finding Plaintiff's petition fails to establish the element of duty

and in dismissing Plaintiff's negligence claims in Counts IV-V (for negligent training and general negligence, respectively) for failure to state a claim on this basis. Point two is granted.

### III. CONCLUSION

Based on the foregoing, the trial court's judgment dismissing Plaintiff's product liability claims in Counts I-III and dismissing Plaintiff's negligence claims in Counts IV-V is reversed and remanded for further proceedings consistent with this opinion.


_____
ROBERT M. CLAYTON III, Judge

Michael S. Wright, J., concurs.
John P. Torbitzky, P.J., dissents in part and concurs in part in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| ROCHELLE AMEER, | ) | No. ED112455 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal from the Circuit Court |
| | ) | of the City of Saint Louis |
| LYFT, INC., | ) | 2222-CC00417 |
| | ) | |
| Respondent | ) | |
| | ) | |
| and | ) | |
| | ) | Honorable Joseph P. Whyte |
| CHRISTOPHER D. MORGAN, and | ) | |
| AJANE BARNES, | ) | |
| | ) | |
| Defendants. | ) | Filed: March 4, 2025 |

### OPINION DISSENTING, IN PART, AND CONCURRING, IN PART

While I concur with most of the principal opinion's reasoning, I respectfully dissent from the principal opinion's holding that Plaintiff adequately alleged defects in the Lyft app. Although alleged as defects in the app, Plaintiff's primary concern is that Lyft failed to screen and verify potential passengers to avoid the type of tragedy at issue in this case. These allegations do not arise from a defect in the app itself. Rather, Plaintiff's petition alleges problems with Lyft's business model and how it provides its ridesharing service. As a result, I believe that Plaintiff failed to allege a colorable claim for strict product liability.

1

I concur with the principal opinion that this case presents a situation where the rapidly advancing technology sector has outpaced the development of our common law, leaving this Court to discern when and how to apply old rules to new technology. I also believe that the principal opinion sets out an appropriate and useful test for addressing this issue. A paraphrase of the principal opinion's holding is that for a plaintiff to properly state a claim for strict products liability arising from a ridesharing application, a plaintiff must allege: (1) the app "has sufficient similarities to a tangible product" and (2) the alleged injury "resulted from a defect in the application itself, whether in the design or in the functionality of the app, rather than from problems with the application developer's services."

I disagree with the principal opinion, however, in its application of this newly described test. Although Plaintiff's allegations are set out in the language of products liability, their meaning strike at Lyft's services and business model. According to Plaintiff's allegations, Lyft utterly failed to protect its drivers by failing to implement systems that would root out bad actors. Taking Plaintiff's allegations as true, Lyft has access to information and technology that could verify riders are who they say they are, thereby thwarting criminal actors at the outset. These allegations fault Lyft for the way it runs its business, rather than alleging a defect in the app.

In contrast, the principal opinion cites two cases wherein the plaintiffs alleged sufficient facts to survive a motion to dismiss. *Brookes v. Lyft Inc.*, a Florida trial court decision, provides an example of a plaintiff alleging a defect in the design of an application. 2022 WL 19799628 (Cir. Ct. Fla. Sep. 30, 2022). In *Brookes*, the plaintiff alleged she was injured when she was hit by a vehicle driven by a Lyft driver who was distracted by the Lyft app. The plaintiff alleged that the app was designed defectively because it "incentivized and habituated drivers to focus and maintain attention to the Lyft application" rather than on the road. In other words, the app itself

2

was designed in such a way as to distract the driver, thereby causing the accident. These allegations, according to *Brookes*, stated a claim for strict products liability.

*Doe v. Lyft*, 2024 WL 4651015 (D. Kan. Nov. 1, 2024), on which the principal opinion relies for the establishment of its two-part test, is another example of a plaintiff alleging actual defects in the Lyft app. In *Doe¸* the plaintiff alleged she had been raped by a Lyft driver who created a fraudulent driver account through the Lyft app. As part of that process on the Lyft app, the driver was required to submit a driver's license and, separately, a current photo. The plaintiff alleged that the driver submitted a photo of herself, but a driver's license from another person. As a result of the discrepancy, the photographs did not match. Plaintiff alleged that the app was defective because it "did not properly distinguish between the actual driver's photo and the photograph on the driver's license." *Id.* The Kansas Federal District Court believed that the app attempted to make this distinction but failed to do so. As a result, the court concluded that the plaintiff had alleged a defect in the app itself and not merely a problem in the services Lyft provides.

"When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *State ex rel. Tyler Techs., Inc. v. Chamberlain*, 679 S.W.3d 474, 477 (Mo. banc 2023) (quoting *Tuttle v. Dobbs Tire & Auto Ctrs., Inc.*, 590 S.W.3d 307, 310 (Mo. banc 2019)). Even so, I am unconvinced that Plaintiff's allegations are anything other than an indictment of Lyft for its failure to secure its drivers by providing better checks on the validity of potential passengers. This is not a defect in the app, but a failure of Lyft as a service. In my view, for Plaintiff to allege a defect in the Lyft app, the defect must arise from something that the app actually did defectively, not something

3

that Plaintiff alleges it should have done, but did not. Here, Plaintiff alleges that the app was defective because it did not verify the assailants' identity, but by Plaintiff's own admission, this is not something the Lyft app was ever intended to do. As a result, I would affirm the judgment on Counts I through III.

I agree with the principal opinion that Plaintiff has alleged sufficient facts to continue with its claim for negligence against Lyft and join the opinion reversing Counts IV and V for further proceedings.

_____
John P. Torbitzky, Judge

4